IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ANOOSH RAKHSHANDEH, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 5:20-CV-110-BQ |
| § | |
| TEXAS TECH UNIVERSITY, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER[1]

In accordance with Federal Rule of Civil Procedure 12(b)(1) and (b)(6), Defendant Texas Tech University seeks dismissal of Plaintiff Anoosh Rakhshandeh's claims for discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964 (CRA). ECF No. 13. Plaintiff filed a response with appendix (ECF Nos. 14, 15, 16) to Defendant's motion, to which Defendant replied. ECF No. 17. The motion is now ripe for decision. For the reasons explained herein, the Court **DENIES** Defendant's Rule 12(b)(1) motion but **GRANTS** its Rule 12(b)(6) motion.

### I. Background

#### A. Factual Allegations

The Court accepts as true the following narrative from Plaintiff's Complaint. On February 1, 2013, Plaintiff began employment at Texas Tech University (TTU) as an assistant professor. Compl. 2 ¶ 9, ECF No. 1. Plaintiff is Iranian and a "non-Christian." *Id.* at 2 ¶ 10. In approximately June 2013, Dr. Michael Orth (Plaintiff's supervisor) and his wife "asked Plaintiff detailed questions about Plaintiff's religious beliefs." *Id.* Thereafter, Dr. Orth, who is "a devout Christian,

---

[1] By consent of the parties and order dated November 5, 2020, this case has been transferred for all further proceedings and entry of final judgment. ECF Nos. 10, 11.

became cold and distant towards Plaintiff." *Id.* Further, "Dr. Orth made a number of statements indicating that he did not like the nation of Iran or its leaders." *Id.*

During his probationary period, Plaintiff "suffered personal circumstances and a medical condition that qualified for an extension of the tenure clock." *Id.* Defendant, however, did not permit Plaintiff "an extension of time to complete one part of his tenure application that would [have] satisf[ied] pending tenure requirements . . . ." *Id.* That is, "Dr. Orth made no extension offer to Plaintiff, nor did he make Plaintiff aware of the extension option despite having full knowledge of Plaintiff's situation and despite doing so for others suffering less serious events/circumstances." *Id.*

Plaintiff's tenure application was subsequently denied. *Id.* at 2–3 ¶ 10. Plaintiff avers that Defendant denied him tenure due to its "discriminatory and disparate treatment . . . ." *Id.* at 3 ¶ 10. Plaintiff also contends that he was "subject to a hostile work environment and was otherwise treated differently than similarly situated employees of Defendant within Plaintiff's department who were outside of [Plaintiff's] nationality or religion." *Id.* at 2 ¶ 10.

On May 21, 2020, Plaintiff filed his original Complaint alleging claims under Title VII. ECF No. 1. Although not specifically pleaded, Plaintiff appears to raise claims for both employment discrimination and hostile work environment.[2] Compl. 2–3 ¶ 10, 3 ¶ 11. Plaintiff seeks injunctive relief in the form of reinstatement "of his faculty appointment at the level of tenured associate professor," lost wages and benefits, monetary damages, and attorney's fees and costs. *Id.* at 3 ¶ 13.

---

[2] This phrase appears only once in Plaintiff's Complaint, and nowhere in his response to Defendant's Motion to Dismiss does he even mention the claim, much less cite well pleaded facts supporting the claim.

### B. The Parties' Pleadings

Defendant filed the pending Motion to Dismiss based on the lack of subject matter jurisdiction (Rule 12(b)(1)) and for failure to state a claim upon which relief can be granted (Rule 12(b)(6)). ECF No. 13. As to dismissal under Rule 12(b)(1), Defendant argues that Plaintiff lacks constitutional standing to bring this action because Plaintiff has not suffered an injury-in-fact that is traceable to Defendant's alleged unlawful action. Def.'s Mot. to Dismiss Pl.'s Orig. Compl. 4, ECF No. 13 [hereinafter Def.'s Mot.]. Further, Defendant believes Plaintiff's claims are not ripe for review "because no final decision was ever rendered regarding Plaintiff's application for tenure." *Id.* at 5. In support, Defendant cites to several exhibits attached to its motion. *Id.* at 6 (citing Ex. 1-1, Ex. 1-3).

As to its request for dismissal of Plaintiff's Title VII claim under Rule 12(b)(6) (*id.* at 7–8), Defendant alleges that Plaintiff has not demonstrated he was qualified for tenure; thus, he cannot state a claim for discrimination. *Id.* at 8. Moreover, Defendant contends that to the extent Plaintiff raises a hostile work environment claim, Plaintiff has not pleaded facts showing sufficient objective and subjective abuse "to meet the requirements of a hostile work environment." *Id.* at 8–9.

In response, Plaintiff states that "Defendant's arguments, which are based on its belief that Plaintiff's claim is being brought because of a denial of tenure, miss the mark of what this lawsuit is about." Pl.'s Resp. 1, ECF No. 15. Plaintiff asserts that although the "circumstances surrounding [his] tenure application are part of the discrimination claims, the discrimination alleged and damages sought by Plaintiff are not restricted to tenure." *Id.* at 1–2. Regarding Defendant's standing argument, Plaintiff contends that a Title VII plaintiff "is only required to establish statutory"—not constitutional—standing. *Id.* at 2. Plaintiff asserts he has pleaded facts

3

demonstrating that he meets the statutory standing requirements for bringing a Title VII claim, i.e., that he was discriminated against on the basis of national origin and religion, he "is an eligible employee under the CRA . . . , Defendant is an employer under the CRA[,] and he suffered damages . . . as a result of unlawful discrimination." *Id.* at 3–4. Similarly, Plaintiff avers that he satisfied all conditions precedent prior to filing this action, and the case is ripe for judicial review. *Id.* at 4.

Moreover, Plaintiff alleges that he has pleaded sufficient facts to survive Defendant's Rule 12(b)(6) motion. *Id.* at 5–6. In support, Plaintiff cites *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). *Id.* Plaintiff asserts he has provided a short and plain statement that not only exceeds the level of factual specificity approved by the Fifth Circuit in *Wooten*, but that also complies with Rule 8 of the Federal Rules of Civil Procedure such that Defendant is on notice of the employment discrimination claim against it. *Id.* at 6–8. Alternatively, Plaintiff asks the Court to permit him leave to amend, to the extent the Court determines that Plaintiff has failed to state a claim. *Id.* at 8.

In reply, Defendant asserts that the only potential adverse employment action in this case is denial of tenure, which Defendant contends does not constitute a "final" employment decision by Defendant. Def.'s Reply 2, ECF No. 17. Thus, the Court should dismiss this action because: (1) Plaintiff cannot establish constitutional—as opposed to statutory—standing without a final tenure decision; (2) the discrimination claim is not constitutionally ripe without a final decision regarding tenure; and (3) Plaintiff has failed to plead any facts demonstrating a viable employment discrimination or hostile work environment claim. *Id.* at 2–5.

## II. Legal Standards

### A. Motion to Dismiss under Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Article III of the Constitution, they possess "jurisdiction only over cases and controversies." *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016) (internal quotation marks omitted) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Without a case or controversy, a plaintiff does not have standing to sue in federal court. *Id.* (citing *Raines*, 521 U.S. at 818). "Standing is a threshold issue that [courts] consider before examining the merits." *Id.*

"A motion to dismiss for lack of Article III standing is properly considered under Rule 12(b)(1)." *Higgins v. Tex. Dep't of Health Servs.*, 801 F. Supp. 2d 541, 547 (W.D. Tex. 2011) (citing *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011)). "The party responding to the 12(b)(1) motion bears the burden of" establishing the court's subject matter jurisdiction. *Wilson v. Hous. Cmty. Coll. Sys.*, 955 F.3d 490, 494 (5th Cir. 2020). "A district court may find a lack of subject matter jurisdiction on either: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 494–95 (internal quotation marks omitted).

To establish standing, a plaintiff must, at a minimum, demonstrate three things: (1) "an injury in fact" (2) that is "fairly traceable to the challenged action of the defendant" and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, alterations, and citations omitted); *Williams*, 843 F.3d at 620. "The triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement . . . ." *Williams*,

5

843 F.3d at 621 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998)). "If the party invoking federal jurisdiction fails to establish any one of injury in fact, causation, or redressability, then federal courts cannot hear the suit." *Id.*

Concomitantly, the party invoking a federal court's jurisdiction must also demonstrate that his claims are ripe for review. "Because ripeness is a component of subject matter jurisdiction, a court does not have the power to decide claims that are not yet ripe." *Avalon Residential Care Homes, Inc. v. City of Dallas*, No. 3:11–CV–1239–D, 2011 WL 4359940, at *5 (N.D. Tex. Sept. 19, 2011). "Ripeness ensures that federal courts do not decide disputes that are premature or speculative." *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (internal quotation marks and citation omitted). "A case becomes ripe when it would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." *Id.* (internal quotation marks and citation omitted).

### B. Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts (not mere conclusory allegations) as true and view them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (stating that courts accept all well-pleaded facts

6

as true, but "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility" (quoting *Iqbal*, 556 U.S. at 678)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III. Discussion

**A. Plaintiff possesses constitutional standing to raise the instant Title VII claims, and they are ripe for review.**

Initially, the Court must address the propriety of Defendant's attachments to its motion. Defendant attached five documents to its Motion to Dismiss: (1) Affidavit of Dr. Michael Orth (Exhibit 1) (ECF No. 13-1); (2) TTU Operating and Policy Procedure 32.01 (Exhibit 1-1) (ECF No. 13-1); (3) ballot (Exhibit 1-2) (ECF No. 13-1); (4) email correspondence between Plaintiff and Dr. Orth (Exhibit 1-3) (ECF No. 13-1); and (5) a letter to Plaintiff authored by Dr. Orth, dated December 17, 2018 (Exhibit 1-4). ECF No. 13-1.[3]

In connection with a 12(b)(1) motion challenging the court's subject matter jurisdiction, a defendant may make a facial or a factual attack. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981). "If a defendant makes a factual attack upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials." *Id.* (internal quotation marks omitted). In response, the party seeking to invoke the court's jurisdiction

---

[3] Defendant did not file a separately paginated appendix as required by N.D. Tex. Local Civ. R. 7.1(i). Citations to Defendant's exhibits therefore refer to the electronic page number assigned by the Court's electronic filing system.

must likewise "submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.* When a defendant makes a factual attack, the "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). That is, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen*, 549 F.2d at 891).

Although not expressly stated, the Court understands Defendant as submitting the documents for consideration *only* as they relate to the Rule 12(b)(1) motion. The Court reaches this conclusion primarily because Defendant never refers to the documents in connection with its assertion that Plaintiff has failed to state a claim under Rule 12(b)(6). *See* Def.'s Mot. 6–9; Def.'s Reply 5. In addition, Defendant does not allege that the documents are central to Plaintiff's claims or referenced by his Complaint—i.e., the standard for considering documents outside the pleadings on a Rule 12(b)(6) motion. *See* Def.'s Mot. 1–10. Instead, Defendant has submitted evidence to support its claim that Plaintiff lacks standing. *See id.* at 6. The Court therefore considers Defendant's Rule 12(b)(1) motion as a factual attack on the Court's subject matter jurisdiction and evaluates Defendant's evidence, as well as Plaintiff's, *only* as it relates to the Court's jurisdiction.

Plaintiff alleges that Defendant denied him tenure. Compl. 2 ¶ 10. Defendant contends, however, that Defendant did not make a "final" decision concerning Plaintiff's tenure application because Plaintiff withdrew his application prior to completing the "tenure and promotion process." Def.'s Mot. 4. In support, Defendants cite Dr. Orth's affidavit, Defendant's "Operating and Policy Procedure" concerning tenure, and emails between Plaintiff and Dr. Orth. *Id.* at 6 (citing ECF No.

13-1, at 3, 5–16, 20–22). Defendant argues that without a final decision from Defendant concerning Plaintiff's tenure, Plaintiff has not suffered an actual injury. *Id.* at 4. Moreover, Defendant avers that even if Plaintiff could demonstrate he had suffered some injury, he has not shown it is fairly traceable to Defendant because Plaintiff "withdrew his tenure application and it is he who is responsible for [Defendant] not reaching a final decision regarding his tenure." *Id.* Similarly, Defendant asserts that Plaintiff's claims are not constitutionally ripe for review because Defendant never rendered a final decision "regarding Plaintiff's application for tenure."[4] *Id.* at 5.

Even if Plaintiff withdrew his tenure application, as Defendant's evidence certainly suggests, the Court finds that at this stage Plaintiff has met his burden of establishing constitutional standing to assert his claims.[5] Similarly, the Court concludes they are ripe for review. Plaintiff alleges that Defendant's unlawful conduct not only resulted in him being denied a tenured position, but also subjected him to a hostile work environment, all of which caused him to suffer lost wages and benefits as well as mental anguish. Compl. 2 ¶ 10, 3 ¶¶ 12–13. Moreover, Defendant's evidence reflects that after tenured faculty unanimously voted against Plaintiff's promotion or receipt of tenure, Dr. Orth informed Plaintiff of the decision. ECF No. 13-1, at 3 ¶¶ 5–6; *see* ECF No. 13-1, at 18 (reflecting that a tenured department faculty committee, Dr. Orth (as department chair), and a college committee, all voted against granting Plaintiff tenure). Shortly thereafter,

---

[4] Although unclear, Defendant appears to challenge only Plaintiff's standing to assert a Title VII discrimination claim. *See* Def.'s Mot. 4–5; Def.'s Reply 1–3. Regardless, for the reasons discussed below the Court finds Plaintiff has met his burden as to both Title VII discrimination and hostile work environment claims.

[5] Plaintiff's contention that he is only required to establish statutory—and not constitutional—standing is inaccurate. Pl.'s Resp. 2. The presence of Article III standing is a necessary prerequisite of every case in federal court. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) (Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit."). Only after finding constitutional standing need a court examine whether a plaintiff has prudential standing under the statute, typically under Rule 12(b)(6). *See Harold H. Huggins Realty*, 634 F.3d at 795 n.2.

Plaintiff withdrew his application. *Id.* at 3 ¶ 6; *see* ECF No. 13-1, at 12 ¶ 3 (providing for application withdrawal).

The Court cannot conclude, based on Defendant's evidence and Plaintiff's allegations, that the tenured faculty's unanimous vote against Plaintiff's receipt of tenure (of which Plaintiff was aware) does not constitute a "final" decision of Defendant such that the Court lacks jurisdiction to consider Plaintiff's Title VII claims. Plaintiff has alleged an injury (denial of tenure, mental anguish, lost wages) that is fairly traceable to Defendant's purported conduct (discrimination on the basis of nationality and religion and subjection to a hostile work environment), and Plaintiff's claims are not subject to further factual development. At this stage, Plaintiff has pleaded adequate facts demonstrating standing and ripeness.[6] *See Lujan*, 504 U.S. at 560–61 (explaining that an injury-in-fact is one that is "concrete and particularized . . . not conjectural or hypothetical," and "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" (internal quotation marks and citations omitted)); *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 368 (5th Cir. 2020) (defining traceability as requiring "something more than conjecture . . . but less than certainty"); *Groome Res. Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) ("A case is generally ripe if any remaining questions are purely legal ones . . . ."); *cf. Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1064 (7th Cir. 2021) (concluding that at summary judgment, plaintiff had not demonstrated she suffered an injury-in-fact such that she had standing to assert a Title VII retaliation claim, where plaintiff only made conclusory allegation that defendant's actions caused her mental anguish but did not point

---

[6] Defendant ultimately contends that because Plaintiff withdrew his tenure application, he did not suffer an adverse employment action, which is a statutory element of a Title VII discrimination claim. Def.'s Reply 1–2. In this regard, Defendant conflates a jurisdictional argument with one based on the merits. *See, e.g., Herrera v. NBS, Inc.*, 759 F. Supp. 2d 858, 861 (W.D. Tex. 2010) (analyzing under Rule 12(b)(6) defendant's argument that plaintiff, a non-citizen working abroad, was not protected by Title VII, finding that such a statutory-deficiency argument was non-jurisdictional).

to any evidence in support); *Stewart v. Hannon*, No. 74 C 2466, 1980 WL 18610, at *5 (N.D. Ill. May 19, 1980) (explaining plaintiffs' Title VII claim was not yet ripe, where they alleged examination on which hiring decisions were based was discriminatory but the examination results were not yet final and defendants could still "decide to weight the questions differently, to change the cut-off score, to weight the written exam differently as a factor in the hiring process, or to otherwise alter the scores and their use").

The Court therefore denies Defendant's Rule 12(b)(1) motion without prejudice to Defendant's right to reassert its challenge later in the proceedings.

### B. Plaintiff has not pleaded adequate facts demonstrating a Title VII violation.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . or national origin." 42 U.S.C. § 2000e-2(a)(1) (2019). Further, an employer may not "limit, segregate, or classify [its] employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion . . . or national origin." *Id.* § 2000e-2(a)(2).

#### *1. Employment discrimination claim*

To state a viable Title VII discrimination claim, a plaintiff must show he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (referencing the framework set forth *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To

survive a motion to dismiss, "a plaintiff need not make out a prima facie case of discrimination . . . ." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002)). Nevertheless, a plaintiff must "plead sufficient facts on all of the *ultimate elements* . . . to make [his] case plausible." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)). "[T]here are two ultimate elements a plaintiff must plead to support" a Title VII employment discrimination claim: "(1) an adverse employment action, (2) taken against a plaintiff *because of* [his] protected status." *Id.* (internal quotation marks and citation omitted).

The Fifth Circuit has observed, however, that in an employment discrimination case, a plaintiff "will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework." *Id.* at 767 (quoting *Chhim*, 836 F.3d at 470). Thus, it may "be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of" a discrimination claim. *Id.* at 767 (internal quotation marks omitted); *see Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) ("The prima facie standard nonetheless has some relevance at the motion-to-dismiss stage.").

Defendant contends that Plaintiff has failed to state a discrimination claim because he has not pleaded facts demonstrating that he was otherwise qualified for tenure. Def.'s Mot. 8; Def.'s Reply 5. The Court agrees. In his Complaint, Plaintiff asserts that he "was not allowed an extension of time to complete one part of his tenure application that would satisfy pending tenure requirements despite meeting all other requirements." Compl. 2 ¶ 10. That is, Plaintiff's allegations indicate that he did not complete all necessary requirements prior to applying for tenure and was therefore not qualified for tenure. *Cf. Zahorik v. Cornell Univ.*, 729 F.2d 85, 93–94 (2d

Cir. 1984) (providing that a plaintiff may demonstrate he is qualified for tenure by "showing that some significant portion of the departmental faculty, referrants or other scholars in the particular field hold a favorable view on the question"); *Torres v. City Univ. of N.Y.*, No. 90 Civ. 2278 (CSH), 1991 WL 143359, at *7 (S.D.N.Y. July 19, 1991) (denying defendant's motion to dismiss plaintiff's Title VII claim in part because plaintiff "allege[d] that his department repeatedly recommended him for reappointment and tenure and that members of the department also wrote letters in support of his reappointment, one of which charged non-academic reasons for the denial of reappointment").

The Court acknowledges, as Plaintiff argues, that he is not required to "make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion . . . ."[7] *Raj*, 714 F.3d at 331. Thus, courts err "by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Cicalese*, 924 F.3d at 767. But Plaintiff must at least plead facts giving rise to a reasonable inference that he meets the elements of a Title VII claim. *See, e.g.*, *Davis v. Tex. Health & Human Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019) (affirming district court's Rule 12(b)(6) dismissal of plaintiff's Title VII claim, where she failed to plead "facts giving rise to a reasonable inference that she applied for and was qualified for the position that ultimately went to her colleague"); *Meadows v. City of Crowley*, No. 4:17-CV-099-A, 2017 WL 2537282, at *3 (N.D. Tex. June 9, 2017) (granting defendant's Rule 12(b)(6) motion as to plaintiff's Title VII claim in part because

---

[7] Plaintiff cites *Wooten* in support of his argument that he has pleaded sufficient facts to state a discrimination claim that is plausible on its face. Pl.'s Resp. 5. In *Wooten*, however, the Fifth Circuit expressly observed that the plaintiff had pleaded facts showing he was qualified for the position from which he was allegedly fired due to his age. 788 F.3d at 498–99 (noting that, in the context of a claim under the Age Discrimination in Employment Act (ADEA), the plaintiff had maintained "twelve years of continuous employment" prior to adverse employment actions). The Court therefore finds *Wooten* does not support Plaintiff's contention that he has stated a claim sufficient to survive a Rule 12(b)(6) motion.

"plaintiff ha[d] not pleaded facts sufficient to show that she was qualified for the positions" for which she applied), *aff'd*, 731 F. App'x 317 (5th Cir. 2018). For the reasons stated above, the Court concludes Plaintiff has failed to do so. Because Plaintiff's own allegations reflect that he had not completed all necessary requirements for tenure, the Court grants Defendant's Motion to Dismiss as to Plaintiff's employment discrimination claim.

### 2. *Hostile work environment claim*

Defendant maintains that, to the extent Plaintiff raises a hostile work environment claim, he fails to plead sufficient factual allegations in support. Def.'s Mot. 8–9; Def.'s Reply 5. Specifically, Defendant asserts that "Plaintiff's allegations that Dr. Orth 'became cold and distant' and that Plaintiff was 'given the cold shoulder' in the department are not sufficiently objectively and subjectively abusive to" constitute a hostile work environment. Def.'s Mot. 9 (quoting Compl. 2 ¶ 10). Plaintiff does not specifically discuss Defendant's contention. *See* Pl.'s Resp. 5–8 (addressing only the discrimination claim but generally arguing that his pleadings are sufficient under Rule 8). As Defendant observes, Plaintiff's Complaint makes only one reference to a hostile work environment. Compl. 2 ¶ 10 (alleging he "was subject to a hostile work environment"). Thus, it is unclear whether Plaintiff intends to raise such a claim.[8]

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stewart v. Miss. Transp.*

---

[8] Plaintiff's pleadings before the Court create serious doubt as to his intent to pursue this claim. Plaintiff only specifically alleges that Defendant violated Title VII "by discriminating against [him] on the basis of his national origin and religion." Compl. 3 ¶ 11. Because Defendant challenges Plaintiff's contention that Defendant "subject[ed] [him] to a hostile work environment," and Plaintiff does not state whether he intended to raise a hostile work environment claim, the Court has considered whether Plaintiff's allegations are sufficient to state a claim. Should Plaintiff elect to amend his Complaint, however, he should clearly state the claims he is asserting in this action, along with the supporting salient facts.

14

*Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)); *see Raj*, 714 F.3d at 330–31 ("A hostile work environment claim . . . necessarily rests on an allegation that an employer has created 'a working environment heavily charged with . . . discrimination.'" (citation omitted)). To state a viable hostile work environment claim, a plaintiff must show he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on his membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*English v. Perdue*, 777 F. App'x 94, 98 (5th Cir. 2019).[9] Defendant only challenges the fourth element—the harassment "affected a term, condition, or privilege of" Plaintiff's employment. Def.'s Mot. 9.

"For harassment to affect a term, condition or privilege of employment, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Buisson v. Bd. of Supervisors of La. Cmty. & Tech. Coll. Sys.*, 592 F. App'x 237, 245 (5th Cir. 2014) (citation omitted). Courts consider the "totality of the circumstances" in determining whether a work environment was objectively hostile or abusive. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004). "To determine whether harassment is so severe or pervasive that it alters the conditions of [a] plaintiff's employment," the Fifth Circuit considers a number of factors: "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating (or whether it is a mere offensive

---

[9] Only the first four elements apply when "the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim . . . ." *Zavala v. Carrolton-Farmers Branch Indep. Sch. Dist.*, No. 3:16-CV-1034-D, 2017 WL 274133, at *4 n.5 (N.D. Tex. Jan. 20, 2017).

utterance), and whether it unreasonably interferes with the victim's work performance." *Buisson*, 592 F. App'x at 245 (citation omitted).

Plaintiff maintains that after Dr. Orth and his wife "asked Plaintiff detailed questions about [his] religious beliefs," Dr. Orth became "cold and distant towards Plaintiff" and he "was given the cold shoulder within the department." Compl. 2 ¶ 10. Plaintiff, however, does not allege that Dr. Orth or others made specific harassing or derogatory comments (as opposed to merely being unfriendly or non-communicative) to or about Plaintiff based on his membership in a protected group. *See id.* Liberally construed, the only other factual allegation possibly related to a hostile work environment claim is Plaintiff's assertion that, "throughout Plaintiff's time in the department, Dr. Orth made a number of statements indicating that he did not like the nation of Iran or its leaders." *Id.* These minimal allegations fail to sufficiently state an actionable hostile work environment claim.

In *Buisson*, the Fifth Circuit found as a matter of law that abuse suffered by a professor far exceeding any alleged by Plaintiff herein did not qualify as harassment "so severe or pervasive that it altered the conditions of [her] employment." *Buisson*, 592 F. App'x at 245. Specifically, the plaintiff's supervisor, *inter alia*: (1) called plaintiff a "chink"; (2) engaged in multiple instances of "rude" behavior directed at plaintiff during the course of the year; (3) granted certain privileges to instructors outside plaintiff's protected class while denying the same to her; (4) stole materials from plaintiff; and (5) lied to plaintiff about receiving compensation for teaching an extra course. *Id.* at 239–41.[10] Although offensive or annoying, the court found that such "incidents do not rise to the level of severity or pervasiveness required to support a hostile-work-environment claim"

---

[10] While *Buisson* was resolved by summary judgment, its holding nevertheless provides relevant guidance on evaluating the legal sufficiency of Plaintiff's factual allegations in establishing conduct "sufficiently severe or pervasive [that it] . . . alter[ed] the conditions of . . . [her] employment and create[ed] an abusive working environment." *Id.* at 245.

16

because "[n]one of them involved physically threatening or humiliating conduct, as opposed to offensive utterances." *Id.* at 245–46. Similarly, Dr. Orth's alleged comments criticizing Iran or its leaders[11] "pale in comparison, both in severity and frequency, to the kinds of verbal harassment [the Fifth Circuit] and other circuits have held would support a Title VII, hostile-work-environment claim." *Buisson*, 592 F. App'x at 245 (comparing and contrasting cases involving "years of inflammatory racial epithets" and "incessant racial slurs").

Considering the totality of circumstances, Plaintiff's limited and conclusory allegations are simply insufficient to state a claim for hostile work environment. *See Whitlock v. Lazer Spot, Inc.*, 657 F. App'x 284, 287 (5th Cir. 2016) (per curiam) (affirming Rule 12(b)(6) dismissal of plaintiff's hostile work environment claim—plaintiff's allegation that defendant (1) punished him "for infractions that white employees were not punished for" and (2) created a difficult work environment did not demonstrate "he was repeatedly subjected to harassment that was linked to his race" and therefore failed to state a plausible claim for relief); *Ryerson v. Berryhill*, No. 3:15-CV-3509-S-BK, 2018 WL 4103433, *10–11 (N.D. Tex. Aug. 2, 2018) (granting summary judgment on plaintiff's complaints concerning office placement, alleged ransacking of her office, co-workers' rude and offensive behavior, and isolated incident involving possible racial slur, where such incidents did "not suffice to demonstrate a hostile work environment"); *Silva v. Spring Branch Indep. Sch. Dist.*, No. H–16–545, 2017 WL 818593, at *17 (S.D. Tex. Jan. 24, 2017) (dismissing under 12(b)(6) plaintiff's hostile work environment claim, where the alleged unlawful incidents "were too few and too minor to be either severe or pervasive" and noting that

---

[11] The Court also finds a distinction between unfavorable comments that may be made regarding a country or its political leaders versus those directed toward an individual based upon his national origin. The former, if objectionable, would seem to fall more naturally within the context of violating a "general civility code" (e.g., a mere offensive utterance), which is not actionable under federal discrimination laws, while the latter would more likely satisfy the requirement that the communication be physically threatening or humiliating.

"[d]iscourtesy, rudeness, teasing, offhand comments, and isolated incidents (unless extremely severe) do not amount to 'discriminatory changes in the terms and conditions of employment'" (quoting *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999)), *R. & R. adopted by* 2017 WL 823584 (S.D. Tex. Mar. 1, 2017); *cf. Aziz v. MMR Grp., Inc.*, No. 18-771-BAJ-EWD, 2019 WL 12536114, at *5 (M.D. La. Feb. 27, 2019) (concluding plaintiff pleaded adequate facts to state claim for hostile work environment, where plaintiff averred that defendant "made 'frequent' racist and Islamophobic remarks—calling [p]laintiff 'bomb maker,' 'monkey,' and a 'radical one'—throughout [p]laintiff's employment," which sufficiently demonstrated "a long-term pattern of ridicule sufficient to establish a [hostile-work-environment] claim"); *Obondi v. UT Sw. Med. Ctr.*, No. 3:15-CV-2022-B, 2016 WL 795966, *1, *5 (N.D. Tex. Feb. 29, 2016) (denying defendant's motion to dismiss on plaintiff's hostile work environment claim where defendant, over a number of years, subjected plaintiff to "demeaning remarks, ridiculing statements, negative comments, and negative innuendos . . . to the point where [she] was overwhelmed and exhausted[,] thereby aggravating [her] medical conditions"). In addition, the Court notes that Plaintiff has pleaded no facts showing that Dr. Orth's comments or conduct prevented him from doing his job. *Buisson*, 592 F. App'x at 245. For these reasons, the Court grants Defendant's Rule 12(b)(6) motion as to any hostile work environment claim asserted by Plaintiff.[12]

### 3. *Leave to amend*

Plaintiff asks the Court for permission to amend his Complaint, to the extent the Court finds Plaintiff has not stated a Title VII claim. Pl.'s Resp. 8. The Court grants Plaintiff's request to replead. There is no indication that Plaintiff cannot, or is unwilling to, cure the pleading defects

---

[12] Where a plaintiff fails to "ple[ad] a claim of hostile work environment that raises his right to relief 'above the speculative level,'" e.g., by alleging facts connecting his race or national origin with actionable harassment, his claim is subject to Rule 12(b)(6) dismissal. *Raj*, 714 F.3d at 331.

identified by the Court herein. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (observing that "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"). Plaintiff shall have thirty days from the date of this Memorandum Opinion and Order to file any amended complaint.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's Rule 12(b)(1) motion. Further, the Court **GRANTS** Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Title VII claims. Finally, the Court **GRANTS** Plaintiff leave to file an amended complaint within thirty days from the date of this Memorandum Opinion and Order.

In light of this Order, the Court **DENIES as moot** the pending Agreed Motion to Stay the scheduling order deadlines. ECF No. 18.

**SO ORDERED**.

Dated: October 27, 2021.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE