IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ANOOSH RAKHSHANDEH, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | No. 5:20-CV-00110-BQ |
| § | | |
| TEXAS TECH UNIVERSITY § | | |
| Defendant. § | | |

### DEFENDANT'S 12(b)(1) & 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief - General Litigation Division

WILLIAM D. WASSDORF
Assistant Attorney General
Texas Bar No. 24103022
will.wassdorf@oag.texas.gov

General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone:   (512) 463-2120
Facsimile:   (512) 320-0667

*Counsel for Defendant*
*Texas Tech University*

# TABLE OF CONTENTS

Table of Contents .................................................................................................................. 2

Index of Authorities ............................................................................................................. 3

I.   Background ................................................................................................................. 5

  A.   Tenure Process at Texas Tech University ............................................................ 5

  B.   Dr. Rakhshandeh Withdrew his Tenure Application ........................................... 6

II.  12(B)(1) Arguments and Authorities .......................................................................... 6

  A.   12(b)(1) Standard of Review ................................................................................ 6

  B.   Factual Attack Analysis ....................................................................................... 7

  C.   Plaintiff Lacks Standing ....................................................................................... 8

  D.   Plaintiff's Claims Are Not Ripe for Review ........................................................ 9

III. 12(b)(6) Argument & Authorities ............................................................................. 11

  A.   12(b)(6) Standard of Review ............................................................................. 11

  B.   Title VII Analysis at the 12(b)(6) Stage ............................................................ 12

  C.   Plaintiff fails to plead facts sufficient to support an inference of disparate treatment ... 13

    1.   Denying extension of time is not an adverse employment action ................. 13

    2.   Plaintiff failed to sufficiently allege facts to support his qualification for tenure ........... 14

    3.   Plaintiff fails to allege facts supporting the reasonable inference that any adverse employment action was based on his protected class .......................................................................... 15

  D.   Plaintiff is Not Entitled to Punitive Damages ................................................... 16

IV.  Conclusion ................................................................................................................ 17

Certificate of Service ........................................................................................................ 18

## INDEX OF AUTHORITIES

Cases

*Alkhawaldeh v. Dow Chemical Co.*,
   851 F.3d 422 (5th Cir. 2017) .................................................................................................. 15
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................... 11, 12, 16
*Banks v. E. Baton Rouge Parish Sch. Bd.*,
   320 F.3d 570 (5th Cir.2003) .................................................................................................... 14
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 11, 12
*Chhim v. Univ. of Texas at Austin*,
   836 F.3d 467 (5th Cir. 2016) .................................................................................................. 12
*Cicalese v. Univ. of Texas Med. Branch*,
   924 F.3d 762 (5th Cir. 2019) .................................................................................................. 12
*Coury v. Prot*,
   85 F.3d 244 (5th Cir. 1996) ...................................................................................................... 7
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ................................................................................................................. 8
*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
   634 F.3d 787 (5th Cir. 2011) .................................................................................................. 12
*Home Builders Ass'n of Miss, Inc. v. City of Madison, Miss.*,
   143 F.3d 1006 (5th Cir. 1998) .................................................................................................. 7
*Howery v. Allstate Ins. Co.*,
   243 F.3d 912 (5th Cir. 2001) .................................................................................................... 7
*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) .................................................................................................. 11
*Lee v. Kansas City Southern Ry. Co.*,
   574 F.3d 253 (5th Cir. 2009) .................................................................................................. 15
*Lujan v. Defs. Of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................................. 8
*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*,
   369 F.3d 464 (5th Cir. 2004) .................................................................................................. 11
*McCabe v. Sharrett*,
   12 F.3d 1558 (11th Cir.1994) ................................................................................................. 13
*McCoy v. City of Shreveport*,
   492 F.3d 551 (5th Cir. 2007) ............................................................................................ 13, 14
*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ............................................................................................................... 12
*Mortensen v. Firt Fed Sav. & Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977) .................................................................................................... 8
*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ............................................................................................................... 10
*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
   833 F. 2d 583 (5th Cir. 1987) ................................................................................................ 10

*Oden v. Oktibbeha Cty., Miss.*,
   246 F.3d 458 (5th Cir. 2001) .................................................................................. 16
*Olivarez v. T-mobile USA, Inc.*,
   997 F.3d 595 (5th Cir. 2021) ............................................................................ 12, 13
*Outley v. Luke & Assoc., Inc.*,
   840 F.3d 212 (5th Cir. 2016) .................................................................................. 15
*Paterson v. Wienberger*,
   644 F.2d 521 (5th Cir. 1981)................................................................................. 7, 8
*Pegram v. Honeywell, Inc.*,
   361 F.3d 272 (5th Cir.2004) .................................................................................. 14
*Pierce v. Tex. Dept. of Crim. Justice, Inst. Div.*,
   37 F.3d 1146 (5th Cir.1994) .................................................................................. 13
*Raj v. La. State Univ.*,
   714 F.3d 322 (5th Cir. 2013).................................................................................. 16
*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ................................................................................... 7
*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
   635 F.3d 757 (5th Cir. 2011) ................................................................................. 11
*Shields v. Norton*,
   289 F. 3d 832 (5th Cir. 2002)................................................................................... 9
*Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*,
   883 F.2d 345 (5th Cir. 1989) ................................................................................... 9
*Stockman v. Fed. Election Comm'n*,
   138 F.3d 144 (5th Cir. 1998) ................................................................................... 7
*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ............................................................................................... 12
*Tanik v. Southern Methodist Univ.*,
   116 F.3d 775 (5th Cir. 1997)........................................................................... 10, 13
*United Transp. Union v. Foster*,
   205 F.3d 851 (5th Cir. 2000).................................................................................. 10
*Williamson v. Tucker*,
   645 F.2d 404 (5th Cir. 1981) ................................................................................... 7
*Yul Chu v. Miss. State Univ.*,
   592 F. App'x 260 (5th Cir. 2014).......................................................................... 14

**Statutes & Constitutions**
42 U.S.C. § 1981a............................................................................................... 16, 17

**Rules**
Fed. R. Civ. P. 12(b)(1)............................................................................................. 6
Fed. R. Civ. P. 12(b)(6) ...........................................................................................11

## I. BACKGROUND

Plaintiff, Dr. Anoosh Rakhshandeh, is a former employee of TTU. (Dkt. 20 at ¶7). Prior to the end of his employment with TTU, Plaintiff was a tenure-track assistant professor. (Dkt. 20 at ¶9) In this suit, Plaintiff alleges that TTU violated Title VII of the Civil Rights Act of 1964 by denying him tenure based on his national origin (Iranian) and his religion (non-Christian). (Dkt. 20 at ¶¶ 3, 10). TTU filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) on April 29, 2021. (Dkt. 13). This court issued its Memorandum Opinion and Order granting the Rule 12(b)(6) portion of TTU's Motion to Dismiss on October 27, 2021 and allowed Plaintiff the opportunity to amend his Complaint. (Dkt. 19 at 19). Plaintiff subsequently amended his Complaint on November 23, 2021 (Dkt. 20). TTU now files this Motion to dismiss Plaintiff's First Amended Complaint.

### A. Tenure Process at Texas Tech University

At all relevant times, Dr. Michael Orth was the chair of the Department of Animal Science and it was his responsibility to oversee the faculty including evaluation of their performance and the promotion and tenure process. (Appx.1). At TTU, tenure-track faculty have a six-year probationary period in which to obtain tenure. (Appx.5). TTU Operating Policy 32.01 provides the procedure by which an application for tenure is processed and considered. (Appx.3–14). The faculty member must submit their application for tenure by the start of the sixth year of the probationary period. (Appx.5). The tenure review process consists of eight steps over four levels of the university. (Appx.6).

The first level is a department level vote of the tenured faculty (Step 1) followed by a recommendation of the department chair (Step 2). (Appx.6, 9–11). Next, at the college level, a review and recommendation by the tenure committee (Step 3) followed by a letter of recommendation from the dean (Step 4). (Appx.6, 11). Third, is a review by the Provost and Senior

Vice President (Step 5) and the Dean of the Graduate School (Step 6). (Appx.6, 11). Finally, the President of the University reviews the application and makes a recommendation to the Board of Regents through the Chancellor (Step 7). (Appx.6, 12). At each stage of the process up to the President, both positive and negative recommendations proceed to the next level. (Appx.11–12). Only the approved recommendations of the President are forwarded to the Chancellor. (Appx.12). The action of the Board of Regents awards the faculty member tenure (Step 8). (Appx.6). Before the end of the sixth probationary year, the candidate is notified that tenure has been awarded or that the appointment will not be renewed at the end of the seventh year. (Appx.5).

### B. Dr. Rakhshandeh Withdrew his Tenure Application

Dr. Rakhshandeh submitted his tenure application to Dr. Orth in August 2018 prior to the beginning of his sixth probationary year as required by OP 32.01. (Appx.1, 5). During Step 1 of the tenure process, the tenured faculty of the department unanimously voted against recommending Dr. Rakhshandeh for tenure. (Appx.2, 15). On November 25, 2018, Dr. Rakhshandeh withdrew his application for tenure. (Appx.2, 16). On December 17, 2018, Dr. Orth accepted Dr. Rakhshandeh's withdrawal request. (Appx.2, 19). By his withdrawal, Dr. Rakhshandeh stopped the tenure process, none of the other steps were completed, and no decision was ever made regarding the award or denial of Dr. Rakhshandeh's tenure. (Appx.2). Because Dr. Rakhshandeh withdrew his application before a decision was made and during his final probationary year, he was granted his terminal appointment which ended on May 31, 2020. (Appx.2, 5).

## II. 12(B)(1) ARGUMENTS AND AUTHORITIES

### A. 12(b)(1) Standard of Review

Federal Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "Federal courts are courts of limited jurisdiction, and absent jurisdiction

conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) motion before addressing any motion as to the merits. *Ramming*, 281 F.3d at 161. In considering such a motion, the court may rely on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* "[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981).

### B. Factual Attack Analysis

In connection with a 12(b)(1) motion challenging the court's subject matter jurisdiction, a defendant may make a facial or factual attack. *Paterson v. Wienberger*, 644 F.2d 521, 523 (5th Cir. 1981). "If a defendant makes a factual attack upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials." *Id.* (internal quotation marks omitted). In response, the party seeking to invoke the court's jurisdiction must likewise "submit facts through some evidentiary method and that the burden of proving by a

preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.* "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen v. Firt Fed Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### C. Plaintiff Lacks Standing

To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case," and that party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992). Here, Plaintiff has failed to bear his burden regarding the injury-in-fact or traceability elements of standing because no action taken by TTU resulted in any injury to Plaintiff.

Plaintiff has failed to bear his burden to establish the three elements of standing. Initially, Plaintiff has failed to prove that he suffered an actual injury because he was never denied tenure. According to Operating Policy 32.01(6)(b), after the review at the College level, "[i]t is the responsibility of the dean to recommend ***either positively or negatively on all promotion or tenure recommendations*** forwarded be department chairpersons. (Appx.11) (emphasis added). Then the Provost and Senior Vice President must also "approve or disapprove ***all*** recommendations received" before transmitting those dossiers and recommendations to the President. (Appx.11) (emphasis added). Because Plaintiff's tenure application would have proceeded beyond the college level had the application not been withdrawn, no final tenure denial could have occurred.

Additionally, assuming *arguendo* Plaintiff has suffered some injury, that injury is not fairly traceable to TTU for two reasons. First, it was Dr. Rakhshandeh that withdrew his tenure application and it is he who is responsible for TTU not reaching a final decision regarding his tenure. (Appx.2, 16). Second, the faculty vote against awarding Dr. Rakhshandeh tenure cannot be considered a final TTU action because Dr. Rakhshandeh withdrew his tenure application before it could proceed to the two remaining mandatory levels of review pursuant to the tenure and promotion process. (Appx.11). Because Dr. Rakhshandeh has failed to establish that he has standing to bring his claims, this Court should dismiss this suit for lack of jurisdiction.

In the Court's opinion on Defendants Motion to Dismiss Plaintiff's Original Complaint, the Court stated that it "cannot conclude, based on Defendant's evidence and Plaintiff's Allegations, that the tenured faculty's unanimous vote against Plaintiff's receipt of tenure does not constitute a 'final' decision of Defendant such that the Court lacks jurisdiction to consider Plaintiff's Title VII claims." However, as explained above, the recommendation of the College and the Provost and Senior Vice President—either positive or negative—would have been forwarded on to the next level of review. (Appx.11). Only at the level of the President, do disapproved recommendations not move on for further review; thus, this is the first level at which a recommendation for denial of tenure could be viewed as final. (Appx.12).

### D. Plaintiff's Claims Are Not Ripe for Review

Ripeness is "a constitutional prerequisite to the exercise of jurisdiction," and may be raised at any time by a party or the court. *Shields v. Norton*, 289 F. 3d 832, 835 (5th Cir. 2002); *see also Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989). The doctrine of ripeness "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate from judicial review. *United Transp. Union v.*

*Foster*, 205 F.3d 851, 857 (5th Cir. 2000). "[A] case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F. 2d 583, 586 (5th Cir. 1987). The ripeness requirement appropriately limits judicial entanglement "in abstract disagreements about administrative policies and practices, and also [ ] protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003).

Plaintiff's claims are not ripe because no final decision was ever rendered regarding Plaintiff's application for tenure. In a Title VII tenure denial case such as this, "the plaintiff must show that: (1) he belongs to a protected group, (2) he was qualified for tenure, and (3) ***he was denied tenure*** in circumstances permitting and inference of discrimination." *Tanik v. Southern Methodist Univ.*, 116 F.3d 775, 775–76 (5th Cir. 1997) (emphasis added).

At a minimum, the first level of review that could be considered "final" is the President because that is the first time a negative recommendation is not considered for further review. (Appx.12). Dr. Rakhshandeh withdrew his application for tenure after only the first level of the tenure review process and before a final determination regarding his tenure application. (Appx.2, 9–12). Had he not withdrawn his application, it would have been forwarded to the Provost and Senior Vice President as well as the President regardless of the recommendations of the lower levels of review. (Appx.11–12). Because Dr. Rakhshandeh withdrew from consideration before TTU made a final decision, "the injury is speculative" and "further factual development [was] required" before Dr. Rakhshandeh's claims could be evaluated. *United Transp. Union*, 205 F.3d at 857; *New Orleans Pub. Serv., Inc.*, 833 F. 2d at 586. Specifically, TTU would have had to have been

allowed to complete the tenure review process. Therefore, Dr. Rakhshandeh's claims are not ripe for review and should be dismissed for lack of jurisdiction.

### III.  12(B)(6) ARGUMENT & AUTHORITIES

#### A. 12(b)(6) Standard of Review

A complaint must be dismissed if the plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004). "To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In considering whether this standard is met, however, a court is not bound to accept as true a legal conclusion couched as a factual allegation. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). A plaintiff's obligation to demonstrate his entitlement to relief requires more than mere conclusory statements. *Twombly*, 550 U.S. at 555. Rather, a plaintiff must plead facts with enough specificity "to raise a right to relief above the speculative level." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787,

796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679). Although a court accepts all well-pleaded facts as true, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

**B.     Title VII Analysis at the 12(b)(6) Stage**

"At the Rule 12(b)(6) stage, [the Court's] analysis of the Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)—and not the evidentiary standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021). "There are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quotations omitted).

"Although [a plaintiff does] not have to submit evidence to establish a prima facie case of discrimination [under *McDonnell Douglas*] at this stage, he [must] plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). When a Title VII disparate treatment discrimination claim depends on circumstantial evidence, the plaintiff "will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework." *Cicalese*, 924 F.3d at 767 (quoting *Chhim*, 836 F.3d at 470). "In such cases, . . . it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." *Id.* (quoting *Chhim*, 836 F.3d at 470).

"Accordingly, when a complaint purports to allege a case of circumstantial evidence of discrimination, it may be helpful to refer to *McDonnell Douglas* to understand whether a plaintiff has sufficiently pleaded an adverse employment action taken 'because of' his protected status as required under *Swierkiewicz*." *Olivarez*, 997 F.3d at 600. In *Olivarez*, for example, the Fifth Circuit held that when the plaintiff "failed to plead any facts indicating less favorable treatment than others 'similarly situated' outside of the asserted protected class" and did not allege any "other facts sufficient to nudge the claims across the line from conceivable to plausible," the plaintiff failed to state a claim for discrimination under Title VII. *Id.*

**C.    Plaintiff fails to plead facts sufficient to support an inference of disparate treatment**

"To establish a prima facie case in the context of a denial of tenure, the plaintiff must show that: (1) he belongs to a protected group, (2) he was qualified for tenure, and (3) he was denied tenure in circumstances permitting an inference of discrimination." *Tanik*, 116 F.3d at 775–76. While tenure decisions are not exempt from judicial scrutiny, tenure decisions in colleges and universities involve considerations that set them apart from other kinds of employment. *Id.* at 776.

**1.  *Denying extension of time is not an adverse employment action***

Adverse employment actions in the discrimination context "include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559–60 (5th Cir. 2007). "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Tex. Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir.1994) (citing *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir.1994)). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361

F.3d 272, 282 (5th Cir.2004) (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.2003)).

Here, Plaintiff appears to allege two distinct adverse employment actions: (1) the denial of his tenure and (2) the denial of his request for an extension to submit his tenure application. (Dkt. 20 at ¶10). TTU does not dispute that the denial of tenure could constitute an adverse employment action, however, the denial of the extension request is not an adverse employment action because it does not constitute an "ultimate employment decision" under the law. *See McCoy*, 492 F.3d at 559–60. Therefore, Plaintiff's discrimination claim based on the denial of his request for an extension of time to submit his tenure application should be dismissed.

### 2. *Plaintiff failed to sufficiently allege facts to support his qualification for tenure*

"Evidence that supports a *prima facie* case [for discriminatory tenure denial] includes departures from university procedures, conventional evidence of bias against the plaintiff, and evidence that 'the plaintiff is found to be qualified for tenure by some significant portion of the departmental faculty, referrants, or other scholars in the particular field.'" *Yul Chu v. Miss. State Univ.*, 592 F. App'x 260, 265 (5th Cir. 2014). Plaintiff fails to demonstrate that he was qualified for tenure under this standard. Plaintiff does not allege any facts that would support the reasonable inference that TTU departed from university procedures or that any department faculty or other scholars in the field believed him qualified for tenure. (Dkt. 20 at pp.4–5).

The Fifth Circuit recognizes that "[u]niversity tenure decisions represent a distinct kind of employment action, involving special considerations." *Id*. Plaintiff attempts to avoid these special considerations—the subjective approval of his peers—by pointing to his efforts in teaching and research. (Dkt. 20 at pp. 4–5). However, these mere conclusory allegations fall short. While Plaintiff alleges he taught classes, mentored students, conducted research, and published articles,

his conclusions that each of those efforts exceeded TTU's requirements for tenure are unsupported by well pleaded facts. (Dkt. 20 at pp. 4–5). Plaintiff's own allegations reflect that he had not completed the necessary requirements for tenure. Plaintiff requested an extension of the time to submit his tenure application "so existing manuscripts could be finalized and published." (Dkt. 20 at ¶10, p. 6). However, if Plaintiff had indeed met the tenure requirements, no extension would have been needed. Because Plaintiff's allegations supporting his qualification for tenure are conclusory, and Plaintiff's own actions indicate that he was not qualified, Plaintiff has failed to allege facts which support the reasonable inference that Plaintiff was qualified for tenure. Plaintiff has, therefore, failed to state a claim for discrimination and this Court should dismiss Plaintiff's suit.

   3. ***Plaintiff fails to allege facts supporting the reasonable inference that any adverse employment action was based on his protected class***

To support the reasonable inference that any adverse employment action was based on membership in a protected class, a Title VII claimant must identify "at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances'" *Alkhawaldeh v. Dow Chemical Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). To be a proper comparator, "'the employees being compared [must have] held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 217–18 (5th Cir. 2016) (quoting *Lee*, 574 F.3d at 260).

In his pleadings, Plaintiff fails to identify any comparator, which is fatal to his claim. Without identifying a comparator, Plaintiff's pleadings do not support the reasonable inference

that an employment action—whether adverse or otherwise—was based on discriminatory intent. *See Raj v. La. State Univ.*, 714 F.3d 322, 330–31 (5th Cir. 2013) (affirming Rule 12(b)(6) dismissal where plaintiff "did not allege any facts, direct or circumstantial, that would suggest [defendant]'s actions were based on [plaintiff]'s race or national origin or that [defendant] treated similarly situated employees of other races or national origin more favorably"). Plaintiff has not identified any comparators by name, title, responsibilities, or supervisor. All plaintiff has done is make the conclusory assertion—not entitled to any deference—that similarly situated individuals were treated more favorably. *See Iqbal*, 556 U.S. at 678 (holding that conclusory statements and threadbare recitation of the elements of a claim are not sufficient at the 12(b)(6) stage). Plaintiff has therefore failed to tie the denial of his tenure to either his national origin or religion. Plaintiff's conclusory allegations are insufficient to support the reasonable inference of discrimination, and thus should be dismissed. *See Raj*, 714 F.3d at 331.

### D. Plaintiff is Not Entitled to Punitive Damages

Plaintiff also alleges that he is entitled to "liquidated/punitive damages." (Dkt. 20 at ¶17). But the law does not authorize plaintiffs to recover these damages against government agencies, and the Court should dismiss any claim for such damages.

Ordinarily, in an action for intentional discrimination under Title VII, the plaintiff may recovery punitive damages. 42 U.S.C. § 1981a(a)(1). The [Civil Rights] Act allows plaintiffs asserting a Title VII claim to recover compensatory and punitive damages, provided that recovery is unavailable under §1981." *Oden v. Oktibbeha Cty., Miss.*, 246 F.3d 458, 465–66 (5th Cir. 2001). However, "[t]he Act precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions." *Id.*; *see also* 42 U.S.C. § 1981a(b)(1) (exempting "a government, government agency or political subdivision"). Therefore, because TTU is a state

university (Dkt. 20 at ¶2), Plaintiff is not entitled to punitive damages and the Court should dismiss those claims.

## IV. CONCLUSION

For these reasons, Texas Tech University respectfully requests that this Court DISMISS Plaintiff's claims in their entirety.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief - General Litigation Division

/s/ *William D. Wassdorf*
**WILLIAM D. WASSDORF**
Texas Bar No. 24103022
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
will.wassdorf@oag.texas.gov
*Counsel for Defendant*
*Texas Tech University*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF, on January 14, 2022 to:

J. Craig Johnston
JOHNSTON & MILLER
1212 13th Street, Ste. 101
Lubbock, Texas 79401
jcraig@nts-online.net
*Counsel for Plaintiff*

/s/ *William D. Wassdorf*
WILLIAM D. WASSDORF
Assistant Attorney General