UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ANOOSH RAKHSHANDEH | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 5:20-cv-00110-BQ |
| | § | |
| TEXAS TECH UNIVERSITY | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS
RESPONSE TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Anoosh Rakhshandeh, Plaintiff, and makes and files this brief in support of his response to Defendant's motion to dismiss Plaintiff's First Amended Complaint and, in support thereof, would respectfully show the Court as follows:

1.

INTRODUCTION

At issue is the motion to dismiss filed by Defendant. Defendant claims by its motion that this Court does not have jurisdiction because, according to Defendant, Plaintiff does not have standing to assert the cause of action being brought by him and because the case is not ripe for review. Defendant also claims that Plaintiff has failed to state a cause of action for discrimination. Plaintiff, a former faculty member employed by Defendant, asserts in this lawsuit that Defendant, in violation of Title VII of the Civil Rights Act, wrongfully discriminated against him on the basis of his national origin and religion throughout the course of his employment, and in connection with an application for tenure submitted by him. Plaintiff seeks to recover economic damages as well as damages for mental anguish. Plaintiff, through his first amended complaint and the

1

evidentiary declaration filed in support of this response, has put forth sufficient facts demonstrating standing and ripeness, as well sufficiently stating a cause of action for discrimination under Title VII.  Therefore, the motion to dismiss filed by Defendant should be denied.

2.

DISCUSSION

A.   Introduction

Defendant challenges Plaintiff's complaint through a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Under 12(b)(1), the issue is whether the Court has jurisdiction of the case in light of Defendant's claims concerning standing and ripeness.  Under 12(b)(6), the issue is whether Plaintiff's complaint sufficiently states a cause of action for discrimination. These issues will be addressed in turn.

B.   Standing and Ripeness

Plaintiff has standing to bring this lawsuit. To establish standing, a plaintiff must demonstrate: (1) an injury in fact; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Dept. of Wildlife*, 504 U.S. 555, 560- 61 (1992).

Defendant argues that Plaintiff has failed to demonstrate standing because, according to Defendant, Plaintiff has failed to prove: (1) that he suffered an actual injury; and (2) if Plaintiff did suffer an injury, that injury is not fairly traceable to Defendant. (Defendant's Motion to Dismiss, p. 8-9). Defendant claims this is true because it did not deny Plaintiff tenure since Plaintiff withdrew his tenure application before it reached the highest level of review. (Id.). Likewise, Defendant argues that since Plaintiff withdrew the application for tenure, Plaintiff's claims are not

2

ripe because no final decision was ever rendered regarding the application for tenure. (Id.). For the reasons that follow, those arguments are not valid as to the present case.

According to Defendant, since Plaintiff withdrew his application for tenure after it was rejected at the first level of the tenure review process, there was no final determination regarding his tenure application. (Id.). Defendant contends that a final decision could only occur if the application had been forwarded to the provost and senior vice president as well as the president, regardless of the recommendations at the lower levels of review. (Id.). Thus, Defendant concludes that the only way Plaintiff could have standing, or that his claim would be ripe, is if Defendant had been allowed to finish the review process at the highest level. This argument is incorrect.

The pleadings of Plaintiff, as well as the evidence produced in connection with this response, are sufficient to establish that Plaintiff has standing to assert his claim and that this claim is ripe for review. Plaintiff states the following in the evidentiary declaration supporting his response:

> My issues began in June or July 2013 after my supervisor, Dr. Michael Orth and/or his wife, asked me detailed questions about my religious beliefs. After that interaction, where I told them that I was not a Christian, Dr. Orth, a devout Christian, became cold and distant towards me and I was given the cold shoulder within the department. Additionally, during my employment, Dr. Orth made a number of statements and engaged in conduct that demonstrated to me that he did not like the nation of Iran or its leaders. Dr. Orth made it clear to me through his statements and treatment of me, that he did not approve of the fact that I was a non-Christian and that he did not approve of my native country.

> Dr. Orth's negative treatment towards me which had continued throughout my employment came to a head when I applied for tenure. Dr. Orth actively engaged in a course of behavior to derail my application and to prevent me from becoming tenured. I was denied tenure despite the fact that I was qualified and satisfied all of the requirements for tenure. On this point, my qualifications for

3

> tenure exceeded or were comparable to other faculty who were not of Iranian/Middle Eastern nationality and/or who did not identify as non-Christian.
>
> …
>
> Dr. Orth was actively involved in the entire process related to the denial of my tenure application. A tenure application is supposed to go through multiple levels of review: department; college; and university. The department level review includes a tenure vote by the tenured faculty within the department. At this stage, Dr. Orth actively campaigned against my tenure application, promoting false claims about my performance and attitude, and, as a result, the tenured faculty (who were all white, evangelical Christian, or both) voted 10-0 against my application. Against University tenure policies, he then sent my application on to the next level (College level) without allowing me to review what he was sending on. This led to my tenure denial at the college level, without having a chance to comment on the denial at the department level. After the negative votes, Dr. Orth told me that my application had not passed the department level review. He told me it was a unanimous vote and that I should withdraw my application. He said that although I could technically fight the denial by seeking review at a higher level, I would lose since everyone was against it. He told me not to fight it but to, instead, go quietly. He said if I went quietly, I would not have a tenure denial letter in my file and that he would write a positive review for future employment sought by me.
>
> With regard to possible college and university level reviews, Dr. Orth told me that he had spoken to both the dean of the college and the university provost, and that, based on those conversations, my application would have no chance of succeeding at the college or university levels. I subsequently, confirmed with the dean and the provost that they had spoken to Dr. Orth and that my application for tenure had no chance of success at a higher-level review. Based on all of these things, I felt I had no reasonable choice but to withdraw the application for tenure from consideration. Moreover, Dr. Orth's communication implied that if I did not withdraw, he would do the opposite, which would impede my ability to find future employment elsewhere. Because I was denied tenure, I was no longer able to continue my employment with Defendant and was I was ultimately removed from my faculty position.

(Plaintiff's App. p. 3-6). The declaration shows that Plaintiff did not simply withdraw his application for tenure on a whim. The evidence shows that Dr. Orth, the person Plaintiff contends

4

played a significant role in the discrimination against Plaintiff, was actively involved in the denial of Plaintiff's tenure application. Additionally, Dr. Orth strongly pressured Plaintiff to withdraw his application and to leave "quietly." The evidence also shows that Plaintiff was told by Dr. Orth that the tenured faculty had voted unanimously against tenure and that the application had no chance of success at the higher levels. The fact that Plaintiff's tenure application had no chance for success at the higher levels was reiterated to Plaintiff by the dean of the college (college level) and by the university provost (university level). At this point, Plaintiff had no reasonable option other than to withdraw the application. (See Plaintiff's App. p. 6).

Because Plaintiff was specifically told by appropriate representatives for each level of the review process that the application for tenure had no chance of success if Plaintiff sought further review, then Defendant's conduct can fairly be said to constitute a final decision for Plaintiff's application as it relates to the claims asserted by Plaintiff in this case. Since the denial of tenure caused Plaintiff to lose his faculty position, there is no question that it led to the damages (denial of tenure, lost wages, mental anguish) alleged by Plaintiff in this case. As a result, Plaintiff has demonstrated sufficient facts for standing and ripeness so as to support a finding by this Court that it has jurisdiction of this case.

D.   Sufficiency under Rule 12(b)(6)

Under the general notice rules of pleading for federal court, Fed. R. Civ. P. 8(a)(2) requires only that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A claim is facially plausible when it contains sufficient factual content

5

for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery could reveal evidence to support the elements of the claim. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

**Qualification for Tenure**

Defendant argues that Plaintiff's First Amended Complaint is insufficient to demonstrate that he was qualified for tenure as required to maintain a discrimination claim based upon denial of tenure. (Defendant's Motion to Dismiss p. 14). This is incorrect. Plaintiff, in the amended complaint, goes into great detail showing the policies and requirements relating to tenure in his department as well as his qualifications for tenure. (Plaintiff's First Amended Complaint pp. 3-8). In the amended complaint, Plaintiff identifies the various criteria (teaching, research, service and administration) used to evaluate tenure applications and then in great detail describes how he was qualified under each of the different criteria. (Id.). There is no question that these pleadings are sufficient at this stage of the proceedings to satisfy any requirement regarding whether Plaintiff has properly alleged that he was qualified for tenure.

Defendant also claims that Plaintiff cannot show that he was qualified since he also requested an extension with regard to the tenure application. (Defendant's Motion to Dismiss p. 15). This argument is also incorrect. As noted above, Plaintiff clearly pleads that he was qualified for tenure at the time his application was submitted. The extension request relates to an effort by

6

Plaintiff to rebut what Plaintiff contends was a pretextual basis for denying tenure being asserted by Defendant at the time, that is, a claim by Defendant that Plaintiff did not have sufficient publications to satisfy tenure requirements. On this point, the amended complaint states:

> Plaintiff should have been granted tenure based on the existing publications. However, after Defendant, without a reasonable basis, indicated to Plaintiff that it would use the number of publications against Plaintiff with regard to his application for tenure, Plaintiff requested an extension so that publications already in the pipeline could be finalized and published.

(Plaintiff's Amended Complaint p. 6). Such pleadings are sufficient at this stage to demonstrate that the request for an extension does not conflict with, and is not fatal to, Plaintiff's claim that he was qualified for tenure at the time his application was submitted.

**Comparators**

Defendant also argues that Plaintiff's Amended Complaint fails to state a cause of action because Plaintiff failed to identify any comparator, which Defendant claims is fatal to Plaintiff's cause of action. (Defendant's Motion to Dismiss, p. 15-16). Defendant claims that without identifying a comparator, Plaintiff's pleadings are simply conclusory and are not sufficient to support the reasonable inference that an employment action was based on discriminatory intent. (Id.). Contrary to Defendant's assertions, however, the allegations made by Plaintiff in his amended complaint with regard to comparators – that is – similarly situated individuals, are not conclusory and are sufficient under Fed. R. Civ. P. 8 and 2(b)(6) to furnish fair and adequate notice to Defendant that Plaintiff is claiming in this lawsuit that he was treated differently than similarly situated employees and what the differing treatment consisted of.

In his amended complaint, Plaintiff identifies the qualifications and requirements for tenure. (Plaintiff's First Amended Complaint, pp. 3-7). Plaintiff states that the primary criteria for

7

granting tenure and promotion are teaching, research, service, and administration. (Id. at 3). With regard to these various criteria, Plaintiff identifies multiple instances where his qualifications were comparable to or exceeded others in the college who had been granted tenure. Within the teaching component, a subset of which is mentoring, Plaintiff's amended complaint states:

> This number of trained graduate students exceeds the expectations for tenure and promotion. Faculty preceding Plaintiff (with the same research, teaching, and service requirements as Plaintiff) who were granted tenure between 2013 to 2018 had trained a lower or similar number of graduate students. Therefore, Plaintiff's accomplishments for the criterion of mentorship exceeded college and departmental expectations, compared to those who were granted tenure between the years of 2013 and 2018.

(Plaintiff's Amended Complaint p. 4-5). As to research, which includes as criteria the number of completed research trials, the number of peer-reviewed publications, and the amount of research funds secured by the faculty member, with regard to comparators, Plaintiff's First Amended Complaint states:

> Plaintiff successfully conducted more than ten field animal trials and over ten laboratory trials. …This level of work clearly indicates that Plaintiff actively conducted research trials, thus meeting, and exceeding the expectations for his appointment with TTU. The faculty granted tenure between the years of 2013 and 2018, conducted fewer numbers of trials than Plaintiff during their six-year probationary period
> …
> During Plaintiff's time with Defendant, he secured $ 984,499.00 in research funds directly and in collaboration with other researchers at TTU and other institutions. Plaintiff acquired these monies from industry, commodity groups, and federal agencies. Of this amount $355,291.00 was credited to Plaintiff by Defendant's Office of Research and Innovation… Moreover, the amount of research funds Plaintiff secured during his six years probational period is comparable to those who were granted tenure between the years of 2013 and 2018. Therefore, with regard to research funds, Plaintiff's performance met or exceeded the standards that were used for promotion and tenure at Defendant's Department of Animal and

>      Food Sciences.
> …

(Plaintiff's First Amended Complaint p. 7).

Additionally, as previously discussed, Plaintiff alleges that a request for an extension was made by him after Defendant questioned Plaintiff's number of publications (which Plaintiff contends was a pretext). Plaintiff alleges that he was treated differently than others who had requested extensions. On this point, Plaintiff states in his complaint as follows:

> Plaintiff requested an extension so that publications already in the pipeline could be finalized and published. Plaintiff should have been granted a six month to one year extension to publish the additional manuscripts. Defendant's internal regulations allow that faculty who encounter significant personal or university related issues that affect the faculty's tenure application are qualified to be granted up to a one-year extension to meet the requirements for tenure and promotion. Others within Plaintiff's department were granted extensions up to a year to complete their tenure requirements for various personal reasons including items such as loss of a family member, childbirth, or a spouse's fertility issue. During the relevant time period, Plaintiff was in the midst of dealing with a serious personal issue on par with those upon which extensions were based for other faculty members. Nonetheless, Plaintiff's request for a six-month extension to finalize remaining publications was denied, even though he was qualified for such extension and the extensions had previously been granted to other faculty members.

(Plaintiff's First Amended Complaint p. 6). The statements by Plaintiff with regard to his qualifications being comparable to other faculty members who have been granted tenure goes well beyond simple conclusory assertions. The complaint is sufficient to put Defendant on notice that Plaintiff is claiming his credentials with respect to specific criteria were comparable to those faculty members that were granted tenure based upon the same criteria. It is also sufficient to put Defendant on notice that Plaintiff was treated differently than other faculty members with regard to his extension request. It certainly satisfies the pleading requirements of Fed. R. Civ. P. 8(a)(2).

Although Plaintiff did not identify specific names of faculty members who had been granted tenure at this early stage of the proceedings, neither, however, has Defendant filed a motion for a more definite statement under Fed. R. Civ. P. 12(e) requesting such specificity. Moreover, Plaintiff has included the names of several specific individuals/comparators in the declaration which has been filed as part of the appendix to this response and is certain additional names will be identified during the course of discovery.

Plaintiff's pleadings satisfy the pleading requirements set forth by the Federal Rules of Civil Procedure and give fair notice to Defendant of the claims being asserted by him in this case. Those claims are ripe for review and Plaintiff has standing to assert them. Therefore, Defendant's motion to dismiss should be denied.

E.      Motion for Leave to Amend

If the Court determines that Plaintiff needs to identify the names of specific faculty members as part of the pleading requirements of Fed R. Civ. P. 8 or 12(b)(6), or the Court requires additional specificity in the pleadings, Plaintiff requests leave to amend the complaint in order to satisfy any such deficiency.

                              Respectfully Submitted,

                              JOHNSTON & MILLER
                              Attorneys at Law
                              1212 13th Street, Suite 101
                              Lubbock, Texas 79401
                              Phone: (806) 785-1499
                              Fax:    (806) 762-6901


                              By:    /s/ J. Craig Johnston
                                          J. Craig Johnston
                                          State Bar No. 0078778

## **CERTIFICATE OF SERVICE**

THIS WILL CERTIFY that a true and correct copy of this document has been served via the CM/ECF notification system on this the 3rd day of February 2022.

    /s/ J. Craig Johnston
J. Craig Johnston