IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

ANOOSH RAKHSHANDEH,                §
                                   §
          Plaintiff,               §
                                   §
v.                                 §     CIVIL ACTION NO. 5:20-CV-110-BQ
                                   §
TEXAS TECH UNIVERSITY,             §
                                   §
          Defendant.               §

## MEMORANDUM OPINION AND ORDER[1]

In accordance with Federal Rule of Civil Procedure 12(b)(1) and (b)(6), Defendant Texas

Tech University seeks dismissal of Plaintiff Anoosh Rakhshandeh's claim of employment

discrimination under Title VII of the Civil Rights Act of 1964 (CRA). ECF No. 23. Plaintiff filed

a response with appendix (ECF Nos. 25, 26, 27) to Defendant's motion, to which Defendant

replied. ECF No. 28. The motion is now ripe for decision. For the reasons explained herein, the

Court **DENIES** Defendant's Rule 12(b)(1) motion, **GRANTS** its Rule 12(b)(6) motion, and

provides Plaintiff one final opportunity to amend his complaint.

### I.      Background

#### A. Factual Allegations

For the purpose of evaluating Defendant's motion to dismiss, the Court accepts as true the

following narrative from Plaintiff's First Amended Complaint.[2] On February 1, 2013, Plaintiff

began employment at Texas Tech University (TTU) as an assistant professor. Am. Compl. 2 ¶ 9,

ECF No. 20. Plaintiff is Iranian and a "non-Christian." *Id.* at 2 ¶ 10. In approximately June 2013,

---

[1] By consent of the parties and order dated November 5, 2020, this case has been transferred to the undersigned for all
further proceedings and entry of final judgment. ECF Nos. 10, 11.

[2] On October 27, 2021, the Court granted Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's original Complaint
but permitted Plaintiff an opportunity to amend. ECF No. 19.

Dr. Michael Orth, Plaintiff's supervisor, "and/or his wife, asked Plaintiff detailed questions about Plaintiff's religious beliefs." *Id.* at 3 ¶ 11. Thereafter, Dr. Orth, who is "a devout Christian, became cold and distant towards Plaintiff." *Id.*

According to Plaintiff, "Dr. Orth's treatment of Plaintiff came to head when Plaintiff applied for tenure." *Id.* at 3 ¶ 12. Specifically, Plaintiff alleges that despite being qualified for tenure under TTU standards and "the measures used to evaluate the applications of other faculty who either preceded Plaintiff or who applied for tenure at the same time as Plaintiff," Defendant denied his application. *Id.* at 2 ¶ 10, 4–7 ¶ 12, 8 ¶ 13. Plaintiff attributes the denial to the "discriminatory bias and efforts of Dr. Orth." *Id.* at 4 ¶ 12; *see id.* at 8 ¶ 14. As to Dr. Orth's specific conduct, Plaintiff asserts that Dr. Orth: (1) gave Plaintiff "the cold shoulder" after learning of Plaintiff's religious beliefs; (2) "made a number of statements indicating that he did not like the nation of Iran or its leaders"; (3) "actively engaged in a course of behavior to derail Plaintiff's application and to prevent [Plaintiff] from becoming tenured"; and (4) evaluated "Plaintiff's performance . . . based on revelation, through prayer, that [Dr. Orth] received from Jesus Christ" while at the same time observing "that Plaintiff was not Christian." *Id.* at 3 ¶¶ 11, 12, 8 ¶ 13.

Sometime after applying for tenure but before the final vote, Plaintiff requested a six-month extension to supplement his application in an effort to address Defendant's concern regarding a purported deficiency in the quantity of Plaintiff's publications.[3] *Id.* at 2 ¶ 10, 6 ¶ 12. In Plaintiff's view, he qualified for an extension of the tenure clock because during his "probationary period, he suffered personal circumstances and a medical condition . . . ." *Id.* at 3 ¶ 11. Dr. Orth, however, "did not grant an extension to Plaintiff, made no extension offer to Plaintiff, [and] did [not] make

---

[3] Plaintiff has not included dates as to the relevant actions, nor does he delineate a clear timeline of events.

Plaintiff aware of the extension option despite having full knowledge of Plaintiff's situation and despite doing so for others suffering less serious events/circumstances." *Id.*

Based on the foregoing, Plaintiff asserts a claim under Title VII for employment discrimination and seeks injunctive relief in the form of reinstatement "of his faculty appointment at the level of tenured associate professor," lost wages and benefits, punitive damages, and attorney's fees and costs. *Id.* at 8–9 ¶¶ 15, 17–18.

### B. The Parties' Pleadings

Defendant filed the pending Motion to Dismiss based on a purported lack of subject matter jurisdiction (Rule 12(b)(1)) and for failure to state a claim upon which relief can be granted (Rule 12(b)(6)). ECF No. 23. As to dismissal under Rule 12(b)(1), Defendant argues that Plaintiff lacks constitutional standing to bring this action because Plaintiff has not suffered an injury-in-fact that is traceable to Defendant's alleged unlawful action. Def.'s Mot. to Dismiss Pl.'s First Am. Compl. 8–9, ECF No. 23 [hereinafter Def.'s Mot.]. Specifically, Defendant asserts that Plaintiff withdrew his tenure application prior to a "final" decision, i.e., the highest level of review, by Defendant. *Id.* Therefore, Plaintiff has not suffered an actual injury and, in any event, the injury is not fairly attributable to Defendant. *Id.* Further, Defendant believes Plaintiff's claims are not ripe for review "because no final decision was ever rendered regarding Plaintiff's application for tenure." *Id.* at 9–10. In support of its arguments, Defendant cites to several exhibits attached to its motion. Def.'s App. 1–19, ECF No. 23-1.

As to its request for dismissal of Plaintiff's Title VII claim under Rule 12(b)(6) (Def.'s Mot. 11–17), Defendant alleges that Plaintiff has not pleaded sufficient facts supporting a viable discrimination claim. Specifically, Defendant argues that: (1) denying an extension of time does not qualify as an adverse employment action; (2) Plaintiff has not shown he was qualified for

3

tenure; and (3) Plaintiff has failed to plead non-conclusory facts that Defendant took an adverse employment action based on Plaintiff's membership in a protected class. *Id.* at 13–16. Finally, Defendant contends that because it is a state entity, Plaintiff cannot recover punitive damages. *Id.* at 16–17.

In response, Plaintiff rejects Defendant's contentions that Plaintiff lacks constitutional standing and his claims are not ripe due to his application withdrawal. Pl.'s Br. in Supp. of his Resp. 2–5, ECF No. 26 [hereinafter Pl.'s Resp.]. Plaintiff asserts that his pleadings establish his "tenure application had no chance for success at the higher levels" of review; therefore, he withdrew. *Id.* at 5. In this posture, Plaintiff contends he possesses standing and his claims are ripe. *Id.* Plaintiff submits an affidavit in support of his standing and ripeness arguments. Pl.'s App. 4–13, ECF No. 27.

Moreover, Plaintiff alleges that he has pleaded sufficient facts to survive Defendant's Rule 12(b)(6) motion. Pl.'s Resp. 6–10. Plaintiff states that his Amended Complaint contains significant detail concerning the requirements for tenure, including facts demonstrating how he met each criterion. *Id.* at 6. The fact that he requested an extension after submitting his tenure application, Plaintiff argues, does not negate his contention that he was qualified at the time he applied. *Id.* Plaintiff also avers that he has identified comparators demonstrating that Defendant treated Plaintiff differently than other similarly situated employees, and has therefore shown that Defendant denied tenure because of Plaintiff's national origin or religion. *Id.* at 7–9. But, to the extent the Court finds Plaintiff needs to name specific faculty members to compare treatment or to otherwise plead additional facts, Plaintiff asks the Court to permit him leave to amend. *Id.* at 10.

In reply, Defendant maintains "Plaintiff concedes that but for his withdrawal of his tenure application it would have undergone further review at higher levels of TTU." Def.'s Reply 1, ECF

No. 28. Thus, the Court should dismiss this action because: (1) Plaintiff cannot establish constitutional standing without a final tenure decision; and (2) the discrimination claim is not constitutionally ripe without a final decision regarding tenure. *Id.* at 1–2. Further, Defendant reasserts its contention that Plaintiff's pleadings "offer[] only wholly conclusory assertions that those 'outside of Plaintiff's class' were granted extensions of time and tenure." *Id.* at 4. Without a specific comparator, Defendant argues, Plaintiff's claims must be dismissed. *Id.*

## II.   Legal Standards

### A. Motion to Dismiss under Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Article III of the Constitution, they possess "jurisdiction only over cases and controversies." *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016) (internal quotation marks omitted) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Without a case or controversy, a plaintiff does not have standing to sue in federal court. *Id.* (citing *Raines*, 521 U.S. at 818). "Standing is a threshold issue that [courts] consider before examining the merits." *Id.*

"A motion to dismiss for lack of Article III standing is properly considered under Rule 12(b)(1)." *Higgins v. Tex. Dep't of Health Servs.*, 801 F. Supp. 2d 541, 547 (W.D. Tex. 2011) (citing *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011)). "The party responding to the 12(b)(1) motion bears the burden of" establishing the court's subject matter jurisdiction. *Wilson v. Hous. Cmty. Coll. Sys.*, 955 F.3d 490, 494 (5th Cir. 2020). "A district court may find a lack of subject matter jurisdiction on either: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 494–95 (internal quotation marks omitted).

To establish standing, a plaintiff must, at a minimum, demonstrate three things: (1) "an injury in fact" (2) that is "fairly traceable to the challenged action of the defendant" and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, alterations, and citations omitted); *Williams*, 843 F.3d at 620. "The triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement . . . ." *Williams*, 843 F.3d at 621 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998)). "If the party invoking federal jurisdiction fails to establish any one of injury in fact, causation, or redressability, then federal courts cannot hear the suit." *Id.*

Concomitantly, the party invoking a federal court's jurisdiction must also demonstrate that his claims are ripe for review. "Because ripeness is a component of subject matter jurisdiction, a court does not have the power to decide claims that are not yet ripe." *Avalon Residential Care Homes, Inc. v. City of Dallas*, No. 3:11–CV–1239–D, 2011 WL 4359940, at *5 (N.D. Tex. Sept. 19, 2011). "Ripeness ensures that federal courts do not decide disputes that are premature or speculative." *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (internal quotation marks and citation omitted). "A case becomes ripe when it would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." *Id.* (internal quotation marks and citation omitted).

### B. Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

6

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009).  In considering 12(b)(6) motions, courts must accept well-pleaded facts (not mere

conclusory allegations) as true and view them in the light most favorable to the plaintiff.  *Twombly*,

550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v.*

*SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (stating that courts accept all well-pleaded facts

as true, but "'[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements' cannot establish facial plausibility" (quoting *Iqbal*, 556 U.S. at 678)).  A

plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

*Twombly*, 550 U.S. at 555 (internal citations omitted).  "The court's review is limited to the

complaint, any documents attached to the complaint, and any documents attached to the motion to

dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.),*

*L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III.    Discussion

#### A.  Plaintiff possesses constitutional standing to raise the instant Title VII claim, and it is ripe for review.

In connection with a 12(b)(1) motion challenging the court's subject matter jurisdiction, a

defendant may make a facial attack or a factual attack. *Paterson v. Weinberger*, 644 F.2d 521, 523

(5th Cir. 1981).  "If a defendant makes a factual attack upon the court's subject matter jurisdiction

over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials."  *Id.*

(internal quotation marks omitted).  In response, the party seeking to invoke the court's jurisdiction

must likewise "submit facts through some evidentiary method and has the burden of proving by a

preponderance of the evidence that the trial court does have subject matter jurisdiction."  *Id.*  When

7

a defendant makes a factual attack, the "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). That is, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen*, 549 F.2d at 891).

The Court construes Defendant's Rule 12(b)(1) motion as making a factual attack on the Court's subject matter jurisdiction. *See* Def.'s Mot. 7–8. Both Plaintiff and Defendant have submitted documents in support of their respective filings, i.e., the Motion to Dismiss and Response. Def.'s App. 1–19; Pl.'s App. 4–13. Thus, the Court evaluates Defendant's, as well as Plaintiff's, evidence as it relates to the Court's jurisdiction.

Plaintiff alleges that when he submitted his tenure application he was qualified, but Defendant nevertheless denied him tenure, citing a lack of publication. *See* Am. Compl. 2 ¶ 10, 4 ¶ 12, 8 ¶ 13. Plaintiff maintains that the purported basis for denial—the lack of publication—was merely "a pretext." *Id.* at 2–3 ¶ 10. The true basis for denial, in Plaintiff's view, was Defendant's (through Dr. Orth) "personal biases against him due to his religion and nationality." *Id.* at 8 ¶ 13. Defendant contends, however, that Defendant did not make a "final" decision concerning Plaintiff's tenure because Plaintiff withdrew his application prior to completing the process—i.e., TTU's President did not deny tenure, which is the necessary final step in determining a faculty member's status. Def.'s Mot. 8–9. In support, Defendants cite Dr. Orth's affidavit, Defendant's "Operating and Policy Procedure" concerning tenure, and emails between Plaintiff and Dr. Orth. *Id.* (citing Def.'s App. 2, 11–12, 16). Defendant argues that without a final decision concerning Plaintiff's tenure, Plaintiff has not suffered an actual injury. *Id.* at 8. Moreover, Defendant avers

that even if Plaintiff could demonstrate he suffered some injury, he has not shown it is fairly traceable to Defendant because Plaintiff "withdrew his tenure application and it is he who is responsible for [Defendant] not reaching a final decision regarding his tenure." *Id.* at 9. Similarly, Defendant asserts that Plaintiff's claims are not constitutionally ripe for review because Defendant never rendered a final decision concerning Plaintiff's application.[4] *Id.* at 10.

Even if Plaintiff withdrew his tenure application, as Defendant's evidence certainly suggests, the Court finds that at this stage Plaintiff has met his burden of establishing constitutional standing to assert his claims. Likewise, the Court concludes they are ripe for review. Plaintiff alleges that Defendant's unlawful conduct resulted in him being denied a tenured position, which caused him to suffer lost wages and benefits as well as mental anguish. Am. Compl. 8 ¶¶ 13, 14, 16, 17. Moreover, Defendant's evidence reflects that after tenured department faculty unanimously voted against Plaintiff's promotion or receipt of tenure, Dr. Orth informed Plaintiff of the decision. Def.'s App. 2 ¶¶ 5–6; *see id.* at 15 (reflecting that a tenured department faculty committee, Dr. Orth (as department chair), and a college committee, all voted against granting Plaintiff tenure). Shortly thereafter, Plaintiff withdrew his application. *Id.* at 2 ¶ 6; *see id.* at 10 (providing for application withdrawal).

The Court cannot conclude, based on Defendant's evidence and Plaintiff's allegations, that the tenured faculty's unanimous vote against Plaintiff's receipt of tenure (of which Plaintiff was aware) does not constitute a "final" decision of Defendant such that the Court lacks jurisdiction to consider Plaintiff's Title VII claims. Citing its tenure-review process, Defendant asserts that it did not make a final decision because Plaintiff withdrew his application prior to proceeding through all steps of the review process. Def.'s Mot. 9 ("Only at the level of the President, do disapproved

---

[4] Defendant raised, and the Court rejected, essentially the same Rule 12(b)(1) arguments in Defendant's prior motion to dismiss. *See* ECF Nos. 13, 19.

recommendations not move on for further review; thus, this is the first level at which a recommendation for denial of tenure could be viewed as final."); Def.'s Reply 2 (maintaining the evidence shows that "but for Plaintiff's voluntary withdrawal, Plaintiff's tenure application would have proceeded to higher levels of review who had the authority to overturn the lower recommendations"). Defendant's tenure-decision procedure, however, specifically provides that a candidate may withdraw his application upon learning of the department chairperson's (in this case, Dr. Orth) recommendation. Def.'s App. 10. Moreover, Plaintiff avers that he spoke with "the dean and the provost," who confirmed "that [his] application for tenure had no chance of success at a higher-level review." Pl.'s App. 6; *see also* Aff. of Dr. Michael Orth, Def.'s App. 2 ¶ 5 ("It is extremely unusual for a faculty tenure vote to be unanimously negative as in Dr. Rakhshandeh's case. In fact, I have never seen this happen before at Texas Tech University in my department.").

At this stage, Plaintiff has pleaded adequate facts demonstrating constitutional standing and ripeness. Plaintiff has alleged an injury (non-recommendation for tenure, mental anguish, lost wages) that would not have occurred but for Defendant's purported conduct (discrimination on the basis of nationality and religion), and Plaintiff's claims do not require further factual development for the purpose of determining jurisdiction. *See Lujan*, 504 U.S. at 560–61 (explaining that an injury-in-fact is one that is "concrete and particularized . . . not conjectural or hypothetical," and "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" (internal quotation marks and citations omitted)); *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 368 (5th Cir. 2020) (defining traceability as requiring "something more than conjecture . . . but less than certainty"); *Groome Res. Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) ("A case is generally ripe if any remaining questions

are purely legal ones . . . ."); *cf. Pederson v. La. State Univ.*, 213 F.3d 858, 871 (5th Cir. 2000) (relying on the Supreme Court's decision in equal protection context in evaluating plaintiffs' standing to assert Title IX claim, stating that "the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract" (quoting *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)); *Stewart v. Hannon*, No. 74 C 2466, 1980 WL 18610, at *5 (N.D. Ill. May 19, 1980) (explaining plaintiffs' Title VII claim was not yet ripe, where plaintiffs alleged examination on which hiring decisions were based was discriminatory but the examination results were not yet final and defendants could still "decide to weight the questions differently, to change the cut-off score, to weight the written exam differently as a factor in the hiring process, or to otherwise alter the scores and their use").

The Court therefore denies Defendant's Rule 12(b)(1) motion without prejudice to Defendant's right to reassert its challenge later in the proceedings.

**B.  Plaintiff has not pleaded adequate facts demonstrating a Title VII violation.**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . or national origin." 42 U.S.C. § 2000e-2(a)(1) (2019). Moreover, an employer may not "limit, segregate, or classify [its] employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion . . . or national origin." *Id.* § 2000e-2(a)(2).

Generally, to state a viable Title VII discrimination claim a plaintiff must show he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone

outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (referencing the framework set forth *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). But the Fifth Circuit has observed that "[u]niversity tenure decisions represent a distinct kind of employment action, involving special considerations." *Chu v. Miss. State Univ.*, 592 F. App'x 260, 265 (5th Cir. 2014). Thus, "in the context of a denial of tenure, the plaintiff must show that: (1) he belongs to a protected group, (2) he was qualified for tenure, and (3) he was denied tenure in circumstances permitting an [inference] of discrimination." *Tanik v. S. Methodist Univ.*, 116 F.3d 775, 775–76 (5th Cir. 1997) (per curiam).

To survive a motion to dismiss in the Title VII context, "a plaintiff need not make out a prima facie case of discrimination." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002)); *see Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021) ("At the Rule 12(b)(6) stage, our analysis of the Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)—and not the evidentiary standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."). Nevertheless, a plaintiff must "plead sufficient facts on all of the *ultimate elements* . . . to make [his] case plausible." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)). "[T]here are two ultimate elements a plaintiff must plead to support" a Title VII employment discrimination claim: "(1) an adverse employment action, (2) taken against a plaintiff *because of* [his] protected status." *Id.* at 767 (internal quotation marks and citation omitted).

Moreover, the Fifth Circuit has noted that, despite the general inapplicability of *McDonnell Douglas* to 12(b)(6) motions targeting Title VII claims, where an employment discrimination claim rests on circumstantial evidence, a plaintiff "will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework."[5] *Id.* (quoting *Chhim*, 836 F.3d at 470). Thus, it may "be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of" a discrimination claim. *Id.* (internal quotation marks omitted); *see Olivarez*, 997 F.3d at 600 ("Accordingly, when a complaint purports to allege a case of circumstantial evidence of discrimination, it may be helpful to refer to *McDonnell Douglas* to understand whether a plaintiff has sufficiently pleaded an adverse employment action taken *because of* his protected status as required under *Swierkiewicz*." (internal quotation marks and citation omitted)); *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) ("The prima facie standard nonetheless has some relevance at the motion-to-dismiss stage.").

### 1. The denial of an extension to supplement a tenure application does not constitute an adverse employment action.

Defendant contends that to the extent Plaintiff alleges a claim based on the purported denial of an extension to supplement his application, such denial does not constitute an adverse employment action. Def.'s Mot. 13–14. Plaintiff does not counter or otherwise address Defendant's argument. Pl.'s Resp. 6–9. Instead, Plaintiff only asserts that his "complaint is sufficient to put Defendant on notice that Plaintiff was treated differently than other faculty members with regard to his extension request." *Id.* at 9.

As noted by Defendant, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492

---

[5] "Where there is direct evidence of a discriminatory basis or motivation for an adverse employment action, the *McDonnell Douglas* framework does not apply." *Chu*, 592 F. App'x at 263.

F.3d at 559 (holding that placing plaintiff on administrative leave did not qualify as an adverse

employment decision). As such, the Court finds that Plaintiff's request for an extension of time to

supplement his tenure application, standing alone, does not constitute an adverse employment

action. *See id.*; *cf. Hassman v. Caldera*, No. 00-1104, 2000 WL 1186984, at *1 (4th Cir. Aug. 22,

2000) (per curiam) (upholding district court's determination that defendant's "decision not to

recommend [plaintiff] for an extension of his overseas tour did not constitute an actionable adverse

employment action").

### 2. *Plaintiff has alleged sufficient facts demonstrating he was qualified for tenure.*

Next, Defendant maintains that Plaintiff has pleaded only conclusory allegations

concerning his qualification for tenure. Def.'s Mot. 14. Consequently, Defendant asserts

Plaintiff's Title VII claim must fail. *Id.* at 14–15. Plaintiff counters that his Amended Complaint

"goes into great detail showing the policies and requirements relating to tenure in his department

as well as his qualifications for tenure." Pl.'s Resp. 6. Plaintiff directs the Court to portions of his

Amended Complaint identifying the criteria Defendant ostensibly uses to evaluate tenure

applications and Plaintiff's alleged achievements under each. *Id.* Plaintiff contends at this

12(b)(6) stage, he has pleaded sufficient facts demonstrating his qualification for tenure. *Id.* The

Court agrees.

Plaintiff asserts that the principal criteria for tenure are "teaching, research, service, and

administration." Am. Compl. 3 ¶ 12. Plaintiff alleges specific facts as to each of those measures

in support of his contention that he was otherwise qualified for tenure. *Id.* at 4–7. Defendant cites

to Plaintiff's allegation that he requested an extension to finalize and publish additional

manuscripts as evidence that Plaintiff acknowledges he was not qualified. Def.'s Mot. 15. But

Plaintiff expressly avers that he "met or exceeded all criteria for tenure and promotion . . . *at the*

*time he applied in 2018*" (Am. Compl. 8 ¶ 13 (emphasis added))—an assertion he supports with specific facts. *Id.* at 4–7. Moreover, Plaintiff explains that he requested an extension only after Defendant indicated it would deny Plaintiff's application because of a publication issue—a reason Plaintiff claims was pretextual. *Id.* at 2–3.

At this stage, the Court finds Plaintiff has pleaded adequate facts demonstrating he satisfied the necessary prerequisites to apply for tenure.[6] *See Chu*, 592 F. App'x at 265 (reviewing first whether plaintiff "met the necessary prerequisites for tenure" and second, whether "the tenure decision was discriminatory").

### 3. *Plaintiff has not pleaded facts supporting a reasonable inference that Defendant denied tenure because of Plaintiff's protected class.*

Defendant contends that Plaintiff has not identified a "comparator"; that is, "Plaintiff's pleadings do not support the reasonable inference that an employment action—whether adverse or otherwise—was based on discriminatory intent." Def.'s Mot. 15–16. Stated differently, Defendant maintains that Plaintiff has not "tie[d] the denial of his tenure to either his national origin or religion." *Id.* at 16. Conversely, Plaintiff argues that he "identifie[d] multiple instances where his qualifications were comparable to or exceeded others in the college who had been granted tenure." Pl.'s Resp. 8. These allegations, Plaintiff maintains, are "sufficient to put Defendant on notice that Plaintiff is claiming his credentials . . . were comparable to those faculty members that were granted tenure." *Id.* at 9.

In so arguing, Plaintiff seems to equate his ostensible fulfillment of the prerequisites necessary to be considered tenure eligible (discussed above), with automatic qualification for

---

[6] As discussed in Section III.B.3 *infra*, the Court distinguishes between the "eligibility requirements" to submit his application and the actual review process. *See Chu*, 592 F. App'x at 262. Plaintiff's pleadings focus almost exclusively on the contents of the application itself with scant facts concerning Defendant's allegedly improper review process.

tenure.  That is, Plaintiff claims that simply completing mandatory tasks under each tenure category necessarily requires the grant of tenure, and anything short of that outcome proves discrimination.  The law, however, demands more—Plaintiff must plead facts demonstrating that Defendant denied him tenure under circumstances permitting an inference of discrimination. *Tanik*, 116 F.3d at 776.  The Fifth Circuit has explained that a plaintiff can establish such intent by showing "departures from university procedures, conventional evidence of bias against the plaintiff, [or] evidence that the plaintiff is found to be qualified for tenure by some significant portion of the departmental faculty . . . or other scholars in the particular field." *Chu*, 592 F. App'x at 265 (internal quotation marks omitted) (quoting *Tanik*, 116 F.3d at 775–76).  Plaintiff has not pleaded facts alleging any of the foregoing such that the Court can conclude Defendant denied tenure based on Plaintiff's protected class, whether it be religion or national origin.

As discussed in Section III.B.2 above, Plaintiff has shown that he completed certain tasks under each prerequisite (e.g., courses taught, publications, mentoring students, etc.).  Other than conclusory allegations, however, Plaintiff fails to connect his apparent accomplishments under each category with Defendant's purported discriminatory denial. *See Zahorik v. Cornell Univ.*, 729 F.2d 85, 93–94 (2d Cir. 1984) ("Given the elusive nature of tenure decisions, we believe that a prima facie case that a member of a protected class is qualified for tenure is made out by a showing that some significant portion of the departmental faculty, referrants [sic] or other scholars in the particular field hold a favorable view on the question."); *Chu*, 592 F. App'x at 262 (explaining that at Mississippi State University, "a professor must both meet the university's eligibility requirements *and* pass its review process" to receive tenure (emphasis added)); *cf. Torres v. City Univ. of N.Y.*, No. 90 Civ. 2278 (CSH), 1991 WL 143359, at *7 (S.D.N.Y. July 19, 1991) (denying defendant's motion to dismiss plaintiff's Title VII claim in part because plaintiff

"allege[d] that his department repeatedly recommended him for reappointment and tenure and that members of the department also wrote letters in support of his reappointment, one of which charged non-academic reasons for the denial of reappointment"). Indeed, Plaintiff fails to plead sufficient facts reflecting Defendant's alleged discriminatory conduct during the review process, such as by contending Defendant deviated from standard procedure or displayed overt bias, or that a substantial portion of the faculty voted in favor of tenure.[7] *See* Am. Compl. 3–4; *Zahorik*, 729 F.2d at 93; *Tanik*, 116 F.3d at 776; *Chu*, 592 F. App'x at 265–66.

Standing alone, Plaintiff's reference to certain comparators does not change the Court's analysis. Under many of the identified criteria, Plaintiff states that his accomplishments were comparable to, or exceeded those of, the faculty "who were granted tenure between 2013 and 2018."[8] *See* Am. Compl. 4–8. As courts have recognized, however, "tenure decisions in colleges and universities involve considerations that set them apart from other kinds of employment decisions." *Tanik*, 116 F.3d at 776. Thus, "[a] denial of tenure by an English department simply cannot be compared with a grant of tenure in the physics or history departments." *Zahorik*, 729 F.2d at 93. And "[e]ven within a single department comparisons are difficult because the number

---

[7] Plaintiff makes a number of general statements concerning Defendant's purported unlawful evaluation of his application. *See, e.g.*, Am. Compl. 3 ¶ 12 (asserting that "Dr. Orth actively engaged in a course of behavior to derail Plaintiff's application and to prevent him from becoming tenured" but failing to provide details regarding Dr. Orth's actions), 4 ¶ 12 (averring, without factual support, that "Plaintiff would have been granted tenure and promotion if his application were evaluated equitably, objectively, and free of discriminatory bias"), 8 ¶ 13 (contending, without specifics, that although he met the criteria, "Plaintiff was denied tenure, not according to objective evaluation of his application using equally applied criteria but, instead, . . . based on personal biases against him due to his religion and nationality"). The foregoing allegations do not reflect, other than in threadbare and conclusory fashion, that Defendant departed from established procedure. Similarly, Plaintiff does not contend that a "significant portion" of the individuals involved in the decision recommended Plaintiff receive tenure. *Tanik*, 116 F.3d at 776. Finally, the Court observes that Plaintiff seemingly attempts to demonstrate "bias on the part of [the] individuals involved" in reviewing his tenure application. *Id.* Plaintiff asserts that the chair of his department, Dr. Orth, "did not like the nation of Iran" and evaluated Plaintiff based on "revelation . . . received from Jesus Christ." Am. Compl. 3 ¶ 11, 8 ¶ 13. But again, Plaintiff's allegations in this regard fall short. Plaintiff does not plead facts connecting Dr. Orth's alleged conduct to the allegedly unlawful tenure denial.

[8] Notably, Plaintiff does not make this same allegation as to publications. Under that category, he states, "[T]he number of publications by Plaintiff met the publication requirements for tenure at the department of Animal and Food Sciences." Am. Compl. 5–6 ¶ 12.

of decisions within a particular period may be quite few, the decisions sometimes may be non-competitive and tenure files typically contain positive as well as negative evaluations, . . . sufficient to support either a grant or denial of tenure." *Id.* "Statements of peer judgments as to departmental needs, collegial relationships and individual merit may not be disregarded absent evidence that they are a facade for discrimination." *Id.* Plaintiff must therefore plead something more than the mere declaration that his application met or exceeded those of other applicants between 2013 and 2018, particularly where he has not included specifics such as the applicants' race, nationality, or religion and whether the applicants were within the same department. *Cf. id.* at 93–94 (providing that "plaintiffs seeking to show that forbidden purposes lurk in a tenure decision have available methods of challenging such decisions," e.g., departure from standard procedure, "[c]onventional evidence of bias," or that the majority of faculty "hold a favorable view" as to applicant's receipt of tenure).

In sum, Plaintiff's own assessment as to the merits of his application at the tenure review stage is not sufficient to plausibly demonstrate that Defendant's denial was the result of discrimination. The Court finds that Plaintiff has not pleaded facts establishing an ultimate element of his Title VII claim—that Defendant denied him tenure because of Plaintiff's protected class. *Cicalese*, 924 F.3d at 766; *Chu*, 592 F. App'x at 265–66; *Tanik*, 116 F.3d at 776.

As noted above, the Court understands that Plaintiff is not required to "make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion." *Raj*, 714 F.3d at 331. Thus, courts err "by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Cicalese*, 924 F.3d at 767. But Plaintiff must at least plead facts giving rise to a reasonable inference that he meets the elements of a Title VII claim. *See, e.g.*, *Olivarez*, 997 F.3d at 600 (affirming district court's

Rule 12(b)(6) dismissal of plaintiff's Title VII claim, where plaintiff failed to "plead any facts that would permit a reasonable inference that [defendant] terminated [plaintiff] because of gender identity"); *Raj*, 714 F.3d at 331 (describing "the ultimate question in a Title VII disparate treatment claim" as "whether a defendant took the adverse employment action against a plaintiff *because of* [his] protected status" and affirming district court's determination that plaintiff did not plead any facts suggesting defendant's actions were based on his race or national origin (internal quotation marks and citation omitted)); *Hendrix v. iQor Inc.*, No. 3:20-cv-0437-N-BT, 2021 WL 3040776, at *5 (N.D. Tex. June 7, 2021) (finding plaintiff's employment discrimination "allegations [were] too conclusory for the Court to reasonably infer that she was treated differently than other similarly situated employees because of her race").   For the reasons stated above, the Court concludes Plaintiff has failed to do so.   The Court therefore grants Defendant's motion on that basis.

## C.  Plaintiff is not entitled to punitive damages.

Finally, Defendant asserts that because it is a state entity, Plaintiff cannot recover punitive damages against it.   Def.'s Mot. 16.   Plaintiff does not address Defendant's argument.   *See* Pl.'s Resp. 10.

"The [Civil Rights] Act allows plaintiffs asserting a Title VII claim to recover compensatory and punitive damages, provided that recovery is unavailable under § 1981." *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 465 (5th Cir. 2001).   But "[t]he Act precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions." *Id.* at 465–66 (citing 42 U.S.C. § 1981a(b), which provides that a plaintiff may not recover punitive damages against "a government, government agency or political subdivision").   Because TTU is a state university, Plaintiff cannot recover punitive damages against it.   *See Champion v. Tex. S. Univ.*, No. 4:19-cv-03025, 2020 WL 2771798, at *3 (S.D. Tex. May 28, 2020)

(dismissing plaintiff's Title VII punitive damages claim because as a Texas state university, defendant was exempt); *Yu v. Univ. of Hous. at Victoria*, No. 4:16-CV-03138, 2018 WL 4960227, at *1 (S.D. Tex. July 13, 2018) (adopting magistrate judge's "conclusion that the Defendants are exempt from punitive damages because they are both government agencies as defined under 42 U.S.C. § 1981a(b)(1)"). The Court therefore dismisses Plaintiff's claim for punitive damages.

### D. Leave to amend

Plaintiff asks the Court for permission to amend his complaint, for the second time, to the extent the Court finds he has not stated a Title VII claim. Pl.'s Resp. 10. The Court grants Plaintiff's request and will provide one further chance to replead. *See Colton v. U.S. Nat'l Bank Ass'n*, No. 3:12–CV–3584–D, 2013 WL 1934560, at *5 (N.D. Tex. May 10, 2013) (explaining that "although the court ha[d] already given [plaintiff] one opportunity to amend, it [would] grant him one last opportunity to replead" because plaintiff had not stated he was unable or unwilling to cure the defects); *Staton Holdings, Inc. v. Russell Athletic, Inc.*, No. 3:09–CV–0419–D, 2009 WL 4016117, at *1, *9 (N.D. Tex. Nov. 20, 2009) (granting plaintiff a second, and final, chance to amend, where "it [was] not clear that [plaintiff's] pleading deficiencies are incurable, and [plaintiff] ha[d] not advised the court that it [was] unwilling or unable to amend in a manner that [would] avoid dismissal"). There is no indication that Plaintiff cannot, or is unwilling to, cure the pleading defects identified by the Court herein. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (observing that "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal").

Plaintiff shall have **fourteen days** from the date of this Memorandum Opinion and Order to file any second amended complaint. The Court grants Plaintiff leave to amend *solely* to correct the deficiencies addressed herein. **This is Plaintiff's final opportunity to cure pleading deficiencies**.

The Court further notes the parties have filed a Joint Motion to Stay Scheduling Order, in which they ask the Court to stay all remaining deadlines until after resolving the pending Motion to Dismiss. ECF No. 29. In light of the Court's determination that Plaintiff should be given a final opportunity to amend, the Court hereby **GRANTS** the parties' motion and **STAYS** all remaining scheduling deadlines until further order of the Court. Should Plaintiff elect to amend his complaint, the Court will enter an amended scheduling order.

## IV.   Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's Rule 12(b)(1) motion but **GRANTS** Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Title VII claim. The Court **GRANTS** Plaintiff leave to file an amended complaint within fourteen days from the date of this Memorandum Opinion and Order. If Plaintiff does not file a second amended complaint within fourteen days, the Court will dismiss this case with prejudice.

**SO ORDERED**.

Dated: May **20**, 2022.

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**